# KIERNAN v. PORTLAND, OREGON.

ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.

No. 503. Argued November 3, 1911.—Decided February 19, 1912.

*Pacific States Telephone Co.* v. *Oregon, ante,* p. 118, followed to the effect that the determination of whether the government of a State is republican in form within the meaning of § 4 of Art. IV of the Constitution is a political question within the jurisdiction of Congress and over which the courts have no jurisdiction.

Where the record does not contain the petition for rehearing but the opinion of the state court denying it discusses at length the Federal question relied on here, this court will infer that the subject was included in the petition.

*Quære:* Whether the plaintiff in a taxpayer's suit against a city to enjoin the issuing of bonds to build a bridge over navigable waters on the ground of unconstitutionality of the ordinance, can raise the question of lack of consent of the Government of the United States.

·THE facts, which involve the constitutionality under § 4 of Art. IV of the Federal Constitution of the initiative and referendum provision of the constitution of the State of Oregon, are stated in the opinion.

‹ *Mr. Ralph R. Duniway*, with whom *Mr. T. J. Geisler* was on the brief, for plaintiff in error:

The initiative and referendum amendment, Art. IV, § 1, of the Oregon constitution, adopted June 2, 1902, is invalid, as it changes the former republican form of government of the State of Oregon into a pure democracy, in violation of § 4, Art. IV, of the Constitution of the United States, which guarantees to every State in this Union a republican form of government. *Crampton* v. *Zabriskie*, 101 U. S. 601, 609; 21 Ency. of Law (2d ed.), 45, 76.

The powers of municipal corporations are limited to the powers granted in their charters. *Pac. University* v. *Johnson*, 47 Oregon, 448; *McDonald* v. *Lane*, 49 Oregon, 530, 532; *Naylor* v. *McCulloch*, 54 Oregon, 305, 308.

Municipalities cannot issue bonds unless the power to do so is conferred by legislative authority, express or implied, and any doubt as to the existence of such power is to be resolved against its existence. 25 Cyc. 1575; 21 Ency. Law (2d ed.), 45, 70; *Bonham* v. *Bank*, 144 U. S. 173; *Klamath Falls* v. *Sachs*, 35 Oregon, 325.

The validity of the constitutional amendment must be determined by what can be done under its authority as written. *Hood River Light Co.* v. *Wasco County*, 35 Oregon, 498, 510, 512; *Ames* v. *People*, 26 Colorado, 83, 109; *S. C.*, 56 Pac. Rep. 656, 663; *People* v. *Johnson*, 34 Colorado, 143; *S. C.*, 86 Pac. Rep. 233 on 237; *Collins* v. *New Hampshire*, 171 U. S. 33; *Henderson* v. *New York*, 92 U. S. 268; *Minnesota* v. *Barber*, 136 U. S. 313; *Stuart* v. *Palmer*, 74 N. Y. 188; *Colin* v. *Lisk*, 153 N. Y. 188; *Gilman* v. *Tucker*, 128 N. Y. 190; *Dexter* v. *Boston*, 176 Massachusetts, 247; *Howard* v. *R. R. Co.*, 207 U. S. 463.

Whether the constitutional amendment to a state constitution violates the Federal Constitution is a judicial question to be considered and decided by the courts. *Kadderly* v. *Portland,* 44 Oregon, 118, 130, 135; *Gunn* v. *Barry,* 15 Wall. 610, 629.

The fact that a constitution (Oklahoma) containing similar provisions to Art. IV, § 1, but not similar to Art. IV, § 1a and Art. XI, § 2, was submitted to Congress, and the State admitted to full rights in the Union under it, cannot make such provisions valid. *Gunn* v. *Barry,* 15 Wall. 610, 629; *In re Rahrer,* 140 U. S. 560; *Calhoun* v. *Calhoun,* 2 So. Car. 301; Cooley's Const. Lim., 6th Ed., 44–45.

The framers of the Constitution of the United States established a republican form of government by means of electing representatives of the people to carry on the government, as distinguished from a democracy. *Minor* v. *Happersett,* 21 Wall. 162, 175.

The power left to the legislature by the Oregon amendment is merely permissive. The legislative power may be taken away entirely by the electors under the initiative and referendum amendment.

By later constitutional amendments the power of the legislature has already been materially curtailed, if it can be done.

See Art. IX, § 1a as to poll or head taxes; and the amendment and Art. XI, § 2, attempting to take away power to legislate as to liquor and give it to the people; amendment, now Art. XI, § 10, attempting to delegate to the electors of counties unlimited power to go into debt to build permanent roads within the county; all passed November 8, 1910.

If these initiative and referendum amendments are valid, the legislature can be abolished and all the legislative functions of the State performed by the electors under the initiative and referendum amendments.

Under this "Oregon system" the electors can call a measure a constitutional amendment, and it is beyond the reach of legislature or courts.

The electors can enact constitutional amendments as easy as they can enact statutes. The only difference in the enactment is naming the act a constitutional amendment instead of a statute.

The veto power of the Governor has been curtailed by the initiative and referendum amendment, Art. IV, § 1. *State* v. *Kline*, 50 Oregon, 431; *Kadderly* v. *Portland*, 44 Oregon, 118; *Oregon* v. *Pacific States Telephone Co.*, 53 Oregon, 164.

It would be but a short step further for the electors to abolish the state courts and try lawsuits by secret ballot under the initiative and referendum amendment. The same statutory proceeding of filing statements for complaint and answer and having a ballot title to be voted for and a hearing by buying space in the state pamphlet could be used. Laws of Oregon, 1907, p. 398.

The power of the electors to encroach upon the departments of the state government by means of the initiative has been upheld by the Supreme Court of Oregon in *Acme Dairy Co.* v. *Astoria*, 49 Oregon, 520, 523; *McKenna* v. *Portland*, 52 Oregon, 582, 587; *Farrell* v. *Portland*, 52 Oregon, 582, 587; *City of Eugene* v. *W. V. Co.*, 52 Oregon, 490, 494; *Lang* v. *Portland*, 53 Oregon, 92, 96; *Portland* v. *Nottingham*, 113 Pac. Rep. 28; *State* v. *Swigert*, 116 Pac. Rep. 440.

That Oregon is now a pure democracy is clear.

Life, liberty and property are protected in Oregon by the good sense of the electors as expressed directly at an election, and in no other way.

The checks and balances of the republican form of government for the protection of the individual and minority are abolished in Oregon.

The framers of the United States Constitution provided

for an indestructible union of indestructible republican States. *Texas* v. *White*, 7 Wall. 730. The "Oregon system" is an attempt of an individual State to change its republican form of government into a pure democracy without the amendment of the United States Constitution permitting that to be done.

The South Dakota initiative and referendum, for instance, is only the right to petition the legislature, and is not revolutionary at all. It does not conflict with the United States Constitution. The revolutionary initiative and referendum of Oregon does.

Oregon under the initiative and referendum and recall has a system in which it is hard to get the courts to decide a case against the vote of the plurality of the people supported by clamor among politicians and newspapers for a given decision. Such a method of enacting law is not due process of law. *Loan Association* v. *Topeka*, 20 Wall. 655; *Holden* v. *Hardy*, 169 U. S. 389.

The Constitution is to be construed as it was construed at the time it was adopted. Its terms mean now what the terms meant at the time of its adoption. *Minor* v. *Happersett*, 21 Wall. 162, 175, 176; *Dred Scott* v. *Sanford*, 19 How. 392, 426; *Acme Dairy Co.* v. *Astoria*, 49 Oregon, 523; *Gibbons* v. *Ogden*, 9 Wheat. 1, 188; *State* v. *Wrighton* (N. J.), 22 L. R. A. 548, 559; 2 Watson on the Constitution, 1289.

The framers of the Constitution drew a distinction between the republican form of government and the democracy. See Goldwin Smith's introduction to the "Federalist"; "Federalist," No. 38; 44 Am. Law Rev. for May and June, 1910, No. 3, pp. 341, 373; Horatio Seymour in Nor. Am. Rev., 1878, on Government of the United States; Vol. 72, Cen. Law Jour., pp. 169 and 368, Mar. 10, 1911.

Even if the State of Oregon can adopt the initiative and referendum amendment, as attempted June 2, 1902,

the electors of the State of Oregon cannot, under the initiative, adopt the further initiative and referendum amendments to the Oregon Constitution, Art. IV, § 1a and Art. XI, § 2, attempted to be adopted June 4, 1906, by which the electors undertook to take away the power of the legislature and people of the State over municipalities and delegate it to the electors of each municipality.

The power of the State to create and control municipalities as its governmental subordinate agents is destroyed by these amendments; in fact, by these amendments the State of Oregon would commit state suicide. *People* v. *Johnson*, 34 Colorado, 143, 151; *People* v. *Sours*, 31 Colorado, 369; *Williams* v. *People*, 38 Colorado, 497, 502.

To turn the sovereign power of the State of Oregon over to the electors of a municipality is to destroy absolutely the principles of representation and of a republican form of government, and to allow the affairs of the State to be run by an oligarchy consisting of the citizens of a municipality which are a mere handful of the people of the entire State; this is clearly unrepublican. *Martin's Exrs.* v. *Martin*, 20 N. J. Eq. 421, 423; *Ex parte Anderson*, 134 California, 73; S. C., 66 Pac. Rep. 194, 195, 196; *Ex parte Farnsworth*, 135 S. W. Rep. 537; *People* v. *Humphrey*, 23 Michigan, 471, 481; *Rice* v. *Foster*, 4 Harr. (Del.) 479.

Laws must emanate from the law-making power, and in a constitutional republic that power can only be a representative legislature. See Tiedeman's Unwritten Const. of U. S., 43; *Holden* v. *Hardy*, 169 U. S. 389.

What now exists in Oregon was utterly unknown in the United States prior to its adoption in Oregon, and attempted adoption in Colorado. 1 Dillon's Munic. Corp., 5th ed., §§ 15 to 63, inclusive.

This power of the legislature over municipalities before the adoption of these constitutional amendments

has been conclusively established in the State of Oregon. *Winters* v. *George,* 21 Oregon, 251, 257; *Simon* v. *Northrup,* 27 Oregon, 487, 495; *Brand* v. *Multnomah County,* 38 Oregon, 79, 91. This power cannot be taken away. 28 Cyc. 132, 235–243; *States* v. *Scales,* 97 Pac. Rep. 587; *Elliott* v. *State,* 121 Michigan, 611; *State* v. *Haines,* 35 Oregon, 379, 381.

The power of the State cannot be invaded by an amendment to the charter of cities by electors of cities. *Cook* v. *Dendginger,* 38 La. Ann. 261, 263; *Nelson* v. *Homer,* 48 La. Ann. 258; *State* v. *M. T. Co.,* 189 Missouri, 83 to 107; *Fragley* v. *Phelan,* 126 California, 383; *Straw* v. *Harris,* 103 Pac. Rep. 777; *McMinnville* v. *Howenstine,* 109 Pac. Rep. 81; *Kansas City* v. *Marsh Oil Co.,* 141 Missouri, 458; *Ewing* v. *Hoblitzelle,* 85 Missouri, 64, 76. See also: *Fawcett* v. *Fitzgerald,* 14 Washington, 604, for limitations on the power of the voters in amending their charter. Also *In re Cloherty,* 2 Washington, 137; *City* v. *State,* 4 Washington, 64; *Tacoma* v. *City,* 14 Washington, 288; *Haset* v. *Seattle,* 51 Washington, 174, 178, 179.

*Mr. Frank S. Grant* and *Mr. William C. Benbow* for defendants in error:

The people have the power of local self-government. Art. I, § 1, Const. Oregon; Amendment X Const. of United States; Cooley on Const. Lim. (7th ed.); pp. 68–69.

The Federal Government is the only party who can question the construction of a bridge over navigable water on account of a lack of Federal authority. None can question the lack of legislative authority to construct a bridge across navigable waters, except the State. *Cudinger* v. *Saginaw,* 132 Michigan, 395, 405; *Portland* v. *Montgomery,* 38 Oregon, 215, 222; *S. C.,* 190 U. S. 89; *Escanaba Co.* v. *Chicago,* 107 U. S. 678, 689; *Fort Plain Bridge Co.* v. *Smith,* 30 N. Y. 44; *Rowe* v. *Strong,* 107 N. Y. 350, 360; *Doolittle* v. *Broome Co.,* 18 N. Y. 155.

Art. IV, § 1, and § 1a do not violate the Federal Constitution. *Kiernan* v. *Portland,* 111 Pac. Rep. (Ore.), 379; *S. C.,* rehearing, 112 Pac. Rep. 402; *Straw* v. *Harris,* 54 Oregon, 424, 430–431; *Bonner* v. *Belsterling,* 137 S. W. Rep. 1155; *Walker* v. *Spokane,* 113 Pac. Rep. (Wash.) 775; *Kadderly* v. *Portland,* 44 Oregon, 118, 144–145; *Hartig* v. *Seattle,* 102 Pac. Rep. (Wash.) 408, 409; *In re Pfahler* (Cal.), 88 Pac. Rep. 270, 272.

Whether or not a state government is republican in form is a political question. *Luther* v. *Borden,* 7 How. 1, 42; *Texas* v. *White,* 7 Wall. 700, 730; *Taylor* v. *Beckham,* 178 U. S. 548; *Hopkins* v. *Duluth,* 81 Minnesota, 189; *In re Duncan,* 139 U. S. 449; *Leeper* v. *Texas,* 139 U. S. 462, 467; *McConaughey* v. *State,* 106 Minnesota, 392; *Brickbome* v. *Brooks,* 165 Fed. Rep. 534.

The Oregon initiative and referendum amendments as to municipalities are valid. Const. Oregon, Art. IV, § 1a; Art. XI, § 2; *Kiernan* v. *Portland, supra; Straw* v. *Harris,* 54 Oregon, 424, 430–431; *Walker* v. *Spokane,* 113 Pac. Rep. (Wash.) 775; *McMinnville* v. *Howenstine,* 109 Pac. Rep. 81; *In re Pfahler* (Cal.), 88 Pac. Rep. 270, 272; *St. Louis* v. *N. W. T. Co.,* 149 U. S. 465.

For definitions of the word republic, see The Century Dictionary; Rapalje & Lawrence's Law Dictionary; 2 Bouvier's Law Dictionary, 577; 20th Century Ency. & Dict.; Encyclopedia Americana (ed. 1903–04); 34 Cyc., pp. 16–22; 24 Amer. & Eng. Ency. of Law, 598; *Chisholm* v. *Georgia,* 2 Dall. 419.

For the meaning of the word republic as defined in the Federal debates at the time of adoption of the Constitution, see Federalist papers Nos. 39 and 43; 5 Elliot's Debates, 160; 3 Elliot's Debates, 34, 322; Madison in The Federalist.

As to what constitutes the principles and meaning of a republican form of government, see: Cooley on Const. Lim. (7th ed.), pp. 3, 6, 9, 45, 65–69; *Chisholm* v. *Georgia,* 2

Dall. 419; *Saratoga Springs* v. *Saratoga Gas Co.*, 191 N. Y. 123; *S. C.*, 18 L. R. A. (N. S.) 718; *Kadderly* v. *Portland*, 44 Oregon, 118, 144–145; *Walker* v. *Spokane*, 113 Pac. Rep. (Wash.) 775; *Hopkins* v. *Duluth*, 81 Minnesota, 189; *Oregon* v. *Pac. States Tel. & Tel. Co.*, 53 Oregon, 162, 166; *Straw* v. *Harris*, 54 Oregon, 424, 430–431; *Ex parte Wagner*, 95 Pac. Rep. (Okl.) 435; *Hartig* v. *Seattle*, 102 Pac. Rep. (Wash.) 408, 409; *In re Pfahler* (Cal.), 88 Pac. Rep. 270, 272.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court:

Following the incorporation into the constitution of the State of Oregon in 1902 of the initiative and referendum amendment referred to in the case of *Pacific States Telephone & Telegraph Co.* v. *Oregon*, just decided, two other amendments to the constitution were adopted by that method, designated, the first as Article IV, § 1a, and the second as Article XI, § 2. The pertinent provisions of Article IV, § 1a, and of Article XI, § 2, are in the margin.[1]

---

[1] Article IV, section 1a. The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. Not more than ten per cent of the legal voters may be required to order the referendum nor more than fifteen per cent to propose any measure, by the initiative, in any city or town.

Article XI, section 2. Corporations may be formed under general laws, but shall not be created by the legislative assembly by special laws. The legislative assembly shall not enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town. The legal voters of every city and town are hereby granted power to

The legislature (Feb. 25, 1907, Laws of 1907, chap. 226, p. 398), authorized municipalities to provide by ordinance for carrying into effect the initiative and refer- endum powers reserved by the amendment to the Con- stitution just quoted. The city of Portland adopted ordinance No. 16311, providing the methods by which the initiative and referendum powers of the city should be exerted. We quote in the margin [1] from the opinion of the

enact and amend their municipal charter, subject to the constitution and criminal laws of the State of Oregon. (1 Lord's Oregon Laws, pp. 91, 118.)

[1] On April 7, 1908, an initiative petition, containing. the required number of signatures, was filed with the council, requesting the city to build a bridge across the Willamette river, from Broadway street in East Portland to the west side of the river, whereupon the City of Portland took steps to obtain plans and specifications for building said bridge. On May 8, 1908, the auditor notified the mayor of the filing of said petition, and requested him to comply with his duties under the charter in regard thereto. On October 20, 1908, the peti- tion, containing a sufficient number of signatures, was presented to the council at a legally called meeting, and at said date the council re- quested the opinion of the city attorney as to the validity thereof. On October 27, 1908, the attorney filed his opinion, affirming its va- lidity, and thereafter, on November 11, 1908, the council passed an ordinance (No. 18,531) submitting to a vote of the people an amend- ment to the city charter, providing for the construction of said bridge and for issuing bonds in the sum of not to exceed $2,000,000 to pay for the same, designating said proposed amendment as § 118½ of Art. VI of Chap. 3, and on November 25, 1908, the council passed a resolution, submitting the proposed amendment to a vote of the people at a special election on April 23, 1909. Thereafter, on February 17, 1909, the council passed an ordinance (No. 18,976), amending ordinance No. 18,531, so as to fix the date of the election on May 8, 1909, in- stead of April 23, as originally specified.. On March 31, 1909, the council passed an ordinance (No. 19,174) expressly repealing ordi- nance No. 18,531 as amended, and no special election was held under any ordinance or resolution. On March 31, 1909, the same date as that of the repealing ordinance, a resolution was passed, authorizing the submission of the charter amendment to a vote of the people at the general election to be held June 7, 1909. More than twenty days

Supreme Court of Oregon in this case the facts concerning the action taken by the municipality leading up to the adoption of an ordinance which forms the subject-matter of this controversy.

The ordinance in question was entitled "To amend Article VI of chapter 3 of. the Charter of the City of Portland . . . by inserting a section in said Article VI of chapter 3 after section 118 and before section 119 thereof, which shall be designated in the Charter as section one hundred and eighteen and a half (118½) of Article VI of chapter 3." Omitting details, the amendment conferred upon the council of the city authority to issue and dispose of bonds of the city not exceeding two millions of dollars, to be sold, as occasion might require, to enable the Executive Board of the city of Portland to construct in the name of the city of Portland a bridge with proper approaches and terminals "across the Willamette river in said city from Broadway street at or near its intersection with Larrabee street on the east side of said river. . . ." The amendment gave power to the Executive Board in building the authorized bridge, to "erect and construct . . . subject to such regulations as may be imposed by the United States, piers, abutments and other necessary supports in the bed of the Willamette river for the foundation of such bridge." Again, as stated by the Supreme Court of Oregon, pursuant to the submission to voters as above stated, "on June 7th the election was held, at which there were cast for the amendment 10,087 votes, and against it 6,061, and on June 21st the mayor proclaimed that the amendment had been adopted." Following the adoption of the ordinance, on October 27, 1909, the council passed an ordinance

prior to the election the auditor of the city published the proposed charter amendment, with the ballot in full, in the city's official newspaper, as required by law, and also sent out and distributed copies of said amendment to the voters of the city. . .

(No. 20208), authorizing the issue and sale of two hundred
and fifty thousand dollars of the bonds provided for in the
amendment to the charter for the purpose of obtaining
funds to commence the construction of the bridge.  On
the promulgation of this ordinance the present suit was
begun by the plaintiff in error in a state court with the
object of enjoining the sale of the bonds and preventing
the carrying out of the amendment of the city charter
which had been adopted in pursuance of the vote as above
stated.  The right to stand in judgment for this purpose
was based upon the interest of the complainant as a citi-
zen and taxpayer.  The complaint stated a multitude of
grounds, assailing in every conceivable form the power to
authorize the voters of the municipality to resort to the
initiative for the purpose of amending the charter; and the
repugnancy of the delegation of that power and of the
charter amendment adopted in pursuance of it to many
provisions of the state constitution and the Constitution
of the United States.  The regularity of the proceedings
taken to adopt the amendment was also elaborately as-
sailed.  The city answered.  The case was submitted to the
trial court on bill and answer, and resulted in the dismissal
of the bill.  The case was taken to the Supreme Court of
the State, where that judgment was affirmed.  The court
delivered two opinions, one on the first hearing and the
other on a rehearing.  The first carefully disposed of the
many objections made to the power under the state con-
stitution to confer on the voters of the municipality the
authority to amend the charter and to the regularity of
the proceedings leading up to the adoption of the amend-
ment, and to the proceedings culminating in the adoption
of the assailed ordinance.  The various contentions con-
cerning these subjects, based upon the Constitution of the
United States, were also disposed of in the course of the
opinion.  We have not examined the petition for the re-
hearing, as it was omitted in printing the record, but it is

inferable, from the elaborate opinion which was delivered on the rehearing, that the main grounds urged for a rehearing were based on the absence of power in a State to adopt the methods of initiative and referendum, and the effect of doing so on the continued existence of a government republican in form. We think this is the reasonable inference, as those subjects were elaborately reviewed by the court on the rehearing.

The errors assigned are numerous and involve assumed state and Federal questions so interwoven as to cause it to be difficult to separate them or state with precision the questions of a Federal nature which they embrace. We need not, however, undertake to do so, as all the questions which it is deemed arise for consideration are in the argument reduced to eight propositions, which are in the margin.[1] Coming to test these propositions, we think on their face it is apparent they are disposed of by either or

---

[1] 1. Can the State of Oregon legally adopt the initiative and referendum amendment to its constitution, Article IV, section 1, attempted to be adopted June 2, 1902?

2. Can the electors of the State of Oregon legally adopt the further initiative and referendum amendments to its constitution, Article IV, section 1-A, and Article XI, Section 2, attempted to be adopted June 4, 1906, by virtue of said Article IV, Section 1?

3. Can the electors of the City of Portland legally adopt the pretended section 118½ of the charter of the City of Portland, which is printed above in this brief, by virtue of the above-mentioned initiative and referendum amendments to the Oregon constitution?

4. Can the City of Portland legally issue bonds, tax plaintiff in error, and build said Broadway Bridge across the navigable Willamette River owned by the State of Oregon, by virtue of the said section 118½ of charter, attempted to be adopted at said city election under said system of government?

5. The Supreme Court of Oregon committed error in deciding that the pretended section 118½ is invalid in so far as it attempts to impose the care and maintenance of the Broadway Bridge upon Multnomah County and then holding that said clause is severable from the rest of the section, and the remainder of the section is valid, as thereby the

both of one or two considerations—(*a*) the necessary operation and effect of the opinion in *Pacific States Telephone & Telegraph Co.* v. *Oregon*, just announced, or (*b*) the conclusive effect on questions of a local and state character resulting from the action of the court below, and hence that none of them have a foundation sufficiently substantial to support the exertion of jurisdiction.

In saying this we are not unmindful that one of the assignments is based upon the contention that as the Willamette River was navigable, there was no power to build a bridge over it without the consent of the Government of the United States. But in the first place, we are unable to perceive upon what theory the complainant possessed the right to raise such a question, and in the second place, the ordinance which empowered the bridge expressly ex-

Supreme Court of Oregon attempted to legislate and authorize the taxation of plaintiff in error and deprived him of the law of the land.

6. The Supreme Court of Oregon committed error in deciding that the granting of a franchise and building a bridge across the Willamette river, owned by the State of Oregon and controlled jointly by the United States of America and the State of Oregon, is a municipal purpose instead of a state purpose and can be granted by the electors of the City of Portland in amending the charter of the City of Portland under the said "Oregon system," as said decision denied to plaintiff in error the law of the land.

7. The Supreme Court of Oregon committed error in deciding that the Council and electors of the City of Portland can enact a charter amendment to the charter of the City of Portland, under said "Oregon system," by which the city could issue bonds in a large amount and tax the property of plaintiff in error for the payment of the bonds as a municipal purpose, when it is a state purpose, and it is not within the constitutional power of the people of the State of Oregon to delegate the power to tax without limitation and exercise state powers to the electors of a municipality, and the attempt to do so is in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States; also in violation of sections 3 and 4 of Article IV of the Constitution of the United States of America, as such grant of power would be for the State of Oregon to commit state suicide and dissolve the State of Oregon into as many smaller States as there are munici-

acted that it should be built in conformity to the require-
ments of the authorities of the United States.   It is to be
observed that both sides refer to and insert in their printed
arguments an act of the legislature of Oregon passed since
this writ of error was sued out (Jany. 18, 1911, Gen. Laws,
1911, c. 6, p. 23).   Nothing could be more complete and
comprehensive in the manifestation of a purpose, so far
as there was power to do so, to cure any and every pos-
sible defect.   Its title is an indication of its purpose and
scope:

   "An act to authorize the construction of a bridge known
as the Broadway bridge, to be built across the Willamette
River in the city of Portland in the State of Oregon and to
cure any errors or irregularities in the passage of the
amendment to the charter of the city of Portland author-

---

palities within the State and to change the republican government of
the State of Oregon into a confederacy of cities within the State of
Oregon, and tends to destroy our system of government created and
guaranteed by the Constitution of the United States of America.

   8. The Supreme Court of Oregon erred in holding and deciding that
plaintiff, a citizen of the United States, must conform his conduct and
hold his property in state matters and tax matters, to a rule of conduct
or law enacted by mere numbers of people and assemblages of people
within the borders of a municipality because it is not in accordance
with due process of law and is in violation of the law of the land to
require any citizen of the United States to conform his conduct, and
hold his property in state matters and in tax matters, to a rule of con-
duct or law, enacted directly by mere numbers of people or assemblages
of people within a municipal corporation, and is contrary to section 1
of the Fourteenth Amendment to the Constitution of the United States
of America, sections 3 and 4 of article IV of the Constitution of the
United States of America; and also is contrary to the implied provi-
sions of the Constitution of the United States that government of the
several States shall be representative in form and that the several
States shall create and maintain representative legislative assemblies,
and that the citizens of the United States shall be protected in their
rights of enjoyment of life, liberty and property by the law of the land
which is an inherent attribute of citizenship of the United States,
which no State or its people may impair.

izing such bridge and to validate and confirm the bonds issued or to be issued for the construction therefor."

We have not deemed it necessary to take into consideration the act of Congress—36 Stat., c. 253, p. 1348—expressly approving the authority granted to build the bridge so far as the United States was concerned, and ratifying any infirmity which might otherwise have arisen in that regard.

It follows that the writ of error must be, and it is,

*Dismissed for want of jurisdiction.*