William Randolph **WRIGHT** et al.

v.

Joan S. **MAHAN** et al.

**Civ. A. No. 79–0531–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Oct. 18, 1979.

Howard E. Copeland, Virginia Beach, Va., for plaintiffs.

Philip R. Trapani, City Atty., Harold P. Juren, Deputy City Atty., Norfolk, Va., Perkins Wilson, Asst. Atty. Gen. of Virginia, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

### I

Plaintiffs, members of an organization known as "The Norfolk Tea Party," filed a Petition for Election in the Office of the Clerk of the Circuit Court of the City of Norfolk, Virginia, on 26 March 1979. Finding that plaintiffs had complied fully with sections thirty through thirty-two of the Norfolk City Charter,[1] The Honorable Morris B. Gutterman, Judge of the Circuit Court of the City of Norfolk, entered an order dated 27 March 1979 calling a special election for 15 May 1979. The defendant members of the Norfolk Electorial Board, joined by the City of Norfolk, thereafter intervened to set aside the order. On 14 May 1979 Judge Gutterman vacated his prior order.[2]

1. The Norfolk City Charter provides both for initiative and referendum elections. The term "initiative" refers to a political procedure whereby citizens may propose laws and enact or reject the same at the polls. The term "referendum" refers to a procedure whereby citizens may approve or reject at the polls any act of the legislative body, in some instances only if specifically referred to the people by the legislature. *See generally* 42 Am.Jur. *Initiative and Referendum,* § 1 *et seq.* (1969).

Sections thirty through thirty-two of the Norfolk City Charter authorize initiative elections. Section 30 provides that "[a]ny proposed ordinance . . . may be submitted to the [Norfolk City] council by petition signed by qualified voters equal in number to ten per cent of the number of electors who cast their votes at the last preceding regular municipal election for the election of councilman. Section 32 of the Charter augments Section 30:

The council shall . . . proceed to consider such petition and shall take final action thereon within thirty days. . . . If the council rejects the proposed ordinance, or passes it in a form different . . ., or fails to act finally upon it . . ., the committee

of the petitioners may require that it be submitted to a vote of the electors in its original form, . . . by the following procedure: Said committee shall present . . . a petition for such election, . . . signed by qualified voters equal in number to twenty-five per cent of the number of electors who cast their votes at the last preceding regular municipal election for the election of councilmen. . . . If it be found that the required number of qualified voters have signed the said petition, then the said petition . . . shall be presented . . . to the corporation court . . . or to the judge thereof . . ., and thereupon the said court, or the judge thereof . . ., *shall* forthwith enter an order calling and fixing a date for holding an election for the purpose of submitting the proposed ordinance to the electors of the said city. (Emphasis added).

2. Judge Gutterman did not itemize his reasons for vacating his prior order calling the initiative election. Rather, the Judge stated simply that the arguments advanced by the defendants were "well grounded." Six principal argu-

Plaintiffs are seeking a writ of error from the Supreme Court of Virginia to review Judge Gutterman's order denying plaintiffs' petition for an initiative election. Plaintiffs also petitioned this Court for declaratory judgment and a writ of mandamus directing Judge Gutterman to call a special election for a vote on the proposed initiative ordinance.[3]

## II

Plaintiffs assert that this Court has jurisdiction pursuant to 28 U.S.C. § 1343(3), which grants original jurisdiction to district courts in civil actions commenced by persons claiming deprivation, under color of State law, of "any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights . . . ." Plaintiffs' substantive claim is based on 42 U.S.C. § 1983.[4] Defendants do not dispute the jurisdiction of this Court, but have filed a motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The gravamen of defendants' 12(b)(6) motion, however, is that plaintiffs' claims derive solely from State law. If the Court finds that the defendants' motion has merit, it necessarily will have found that it lacks jurisdiction under 28 U.S.C.A. § 1343(3).

## A.

Defendants' motion to dismiss rests principally on *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943). In *Snowden,* a State primary canvassing board refused to certify the plaintiff as a nominee for a State office, such certificate being a prerequisite to inclusion of a candidate's name on the ballot. Plaintiff alleged that the board's refusal deprived him of rights secured by the Fourteenth Amendment. The district court granted defendants' motion to dismiss. The United States Supreme Court affirmed, holding that plaintiff's right, if any, to have his name appear on the ballot was predicated on State law, and that the deprivation or interference with such right by State action did not violate the privileges and immunities clause nor the due process and equal protection clauses of the Fourteenth Amendment. 321 U.S. at 6–8, 64 S.Ct. 397.

The Supreme Court has not specifically questioned or reviewed its decision in *Snowden.* Plaintiffs, however, question the continued vitality of *Snowden* in light of more recent decisions which have substantially altered the constitutional matrix in the area of voting rights. Plaintiffs would have the Court view this controversy as one affect-

ments were made by the defendants in support of their motion to vacate; these were:

(a) The actions of the Norfolk City Council in preparing, approving and adopting the annual Norfolk City tax ordinance are administrative in nature and as such, are not subject to initiative processes.

(b) The initiative procedures of the Norfolk Charter are superseded and repealed by a State law which prohibits the holding of an initiative election.

(c) The clerk failed to ascertain and certify that the signatures on the petitions filed by the Norfolk Tea Party were of qualified voters, as required by Norfolk City Charter Section thirty-two.

(d) The time periods within which said election may be held are governed by State law, which prohibits the holding of an election in the time frame designated by the order.

(e) The proposed ordinance is fatally defective in that it does not contain a title as required by the Charter.

(f) The taxing authority, which is derived from the Constitution of Virginia and granted by the General Assembly, is vested solely in the

elected representatives of the City and cannot be delegated to any other body.

**3.** The question that plaintiffs are seeking to have placed on the ballot is similar to that presented to the citizens of California in "Proposition 13." In an appendix to his original order for a special election Judge Gutterman stated the initiative proposition: "Shall the real estate tax rate of the City of Norfolk be reduced from $1.62 per $100 assessed valuation to $1.15 per $100 assessed valuation?"

**4.** 42 U.S.C.A. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

ing their fundamental right to vote. The issue, more fully framed, is whether a State judge's denial of a properly filed petition for a municipal initiative election contravenes the First Amendment guarantees of freedom of expression and the right to petition the government for redress of grievances, as applied to the States through the due process clause of the Fourteenth Amendment.[5]

### B.

■ The Fourteenth Amendment provides that no State shall deprive a person of "life, liberty, or property, without due process of law." A party seeking relief under the due process clause must establish first, that he has been deprived by the State of "life, liberty, or property," and second, that the deprivation occurred without "due process."

■ Plaintiffs, as members of the Norfolk Tea Party, and as registered voters, claim that their First Amendment rights to an initiative election, to a place on the ballot in that election, and to vote, have been denied without due process. It is clear that the freedoms guaranteed by the First Amendment against infringement by the federal government are within the "liberty" protected from State deprivation by the due process clause. *Cf. Murdock v. Pennsylva-*

*nia,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) (establishment of religion); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (free exercise of religion); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) (freedom of speech and of the press); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) (freedom of association); *Bates v. Little Rock,* 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960) (right to petition the government for redress of grievances). What is unclear, however, is whether the rights claimed by the plaintiffs in this case are protected by the First Amendment or by any other provision of the Constitution.

Over three and a half decades have passed since the decision of *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943). In that time there has been "an enlarged demand for an expansion of political opportunity." *Lubin v. Panish,* 415 U.S. 709, 713, 94 S.Ct. 1315, 1318, 39 L.Ed.2d 702 (1974). The courts have responded to that demand by gradually broadening the contours of the Fourteenth Amendment, in particular the equal protection clause.[6] The net effect is that much of the law propounded by the Court in *Snowden* has been changed. The Supreme Court no longer holds, as it did in *Snowden,* that the right to

---

**5.** Plaintiffs do not challenge the validity of the Norfolk Charter provision pertaining to initiative elections. Nor do plaintiffs allege that defendants' action was intentionally discriminatory, conspiratorial, or fraudulent. Rather, plaintiffs claim that the State court erred in applying State law when it denied plaintiffs' petition for election, thereby depriving plaintiffs of a "federally protected" right to vote upon an initiative question. Plaintiffs identify the source of this right as the First Amendment and the due process clause of the Fourteenth Amendment; the Court will limit its analysis of plaintiffs' contention accordingly. Plaintiffs make no claim founded on the equal protection clause of the Fourteenth Amendment nor does any such claim appear tenable.

**6.** *See, e. g., Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (State law requiring a filing fee for candidates a denial of equal protection); *Phoenix v. Kolodziejaki,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1969) (State provisions excluding nonproperty owners from voting a denial of equal protection);

*Harper v. Va. Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (State's imposition of a poll tax a denial of equal protection); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1963) (State geographical apportionment scheme diluting weight of vote because of place of residence a denial of equal protection).

Developments in the courts were tracked by developments elsewhere that provide further evidence of the demands for increased and protected political opportunity. Both the Twenty-fourth Amendment, ratified in 1964, and the Twenty-sixth Amendment, ratified in 1971, added to the already large number of constitutional provisions dealing with the right to vote or the conduct of elections. *See* U.S.Const. Art. I, §§ 2, 3, 4; Art. II, § 1; amends. 12, 15, 17, 19. Congress underscored the shift from State derived to federally secured election rights by passing the Voting Rights Act of 1965, 42 U.S.C. §§ 1973 *et seq.*

vote in State elections, or to become a candidate for State office, are rights created and protected purely by State laws.[7]

Today the right to vote in State as well as in federal elections, and the protection afforded that right by the federal Constitution, are unquestioned. *Harper v. Va. Bd. of Elections,* 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1963). The rationale for finding this right in the Constitution was expounded by the Court in *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964):

> No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.[8]

■ The Supreme Court also holds that the right of an individual or a party to reasonable access to a ballot in State elections is a right secured by the United States Constitution. In a series of ballot placement cases the Court has emphasized the right to pursue elective office, and has afforded careful scrutiny to State regulations

burdening that right.[9] *Cf. Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (State law having the effect of excluding from the ballot independent and minority party candidates violative of equal protection clause); *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (State law requiring payment of prohibitively large filing fees by candidates violative of equal protection clause); *Lubin v. Panish,* 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974) (State law requiring payment of moderate fees by indigent candidates violative of equal protection clause); *Elections Bd. v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979) (State signature requirements for new political party and independent candidates violative of equal protection clause).

The cited ballot placement cases are distinguishable in that they involved State statutes which prevented *equal access* to ballots, while this case involves State action which wholly denies ballot access. This is especially significant when it is recognized that the federal right of reasonable access to a ballot in State elections, as presently articulated by the Supreme Court, derives from the equal protection clause. Plaintiffs

---

**7.** Lower federal courts on several occasions have upheld the view that the right or privilege of becoming a candidate for State office is derived from State rather than national citizenship and that therefore such right is not protected against State action by the due process clause. *See, e. g. Johnson v. Hood,* 430 F.2d 610 (5th Cir. 1979); *Vandross v. Ellisor,* 347 F.Supp. 197 (D.S.C.1972); *Snyder v. Swann,* 313 F.Supp. 1267 (E.D.Tenn.1970); *Heiser v. Rhodes,* 305 F.Supp. 269 (S.D.Ohio 1969).

**8.** This view, itself, may be illusory when it is considered that most totalitarian countries today call themselves "republics" and permit or require their people to cast ballots. This Court reads the quoted language as intended to define "the right to vote" as the exercise of free choice in an open election.

**9.** There is some disagreement among members of the Supreme Court about whether the right of reasonable ballot access is a "fundamental right," and thus whether an infringement of that right triggers strict judicial review. *Compare* Justice Marshall's opinion for the Court in *Election Bd. v. Socialist Workers Party,* 440 U.S. 173, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979)

("When such vital individual rights are at stake, a State must establish that its classification is necessary to serve a compelling interest."), *with* the concurring opinions in the same case by Justice Rehnquist (The Illinois law "bears no rational relationship to any state interest.") *and* Justice Stevens ("[L]egislation imposing a significant interference with access to the ballot must rest on a rational predicate.") *See also Mancuso v. Taft,* 476 F.2d 187, 193 n. 7 (1st Cir. 1973).

Less disagreement exists about the rationale of the right of reasonable ballot access:

> The interests involved are not merely those of parties or individual candidates; the voters can assert their preferences only through candidates or parties or both and it is this broad interest that must be weighed in the balance. *The right of a party or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of voters.*

*Lubin v. Panish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974) (emphasis added); *accord, Bullock v. Carter,* 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).

here make no claim founded on equal protection.[10] Rather, plaintiffs assert that their right to an initiative election, to a place on the ballot in that election, and to vote, are grounded on the First Amendment and are protected by the due process clause of the Fourteenth Amendment.[11]

The Supreme Court never has held that the right to vote or to reasonable ballot access stem from the First Amendment. The Court held that voting is a fundamental right, secured by the equal protection clause, in *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). In *Harper* the Court was confronted with the argument that the right to vote is implicit in the guarantees of the First Amendment, but did not reach that question: "[w]e do not stop to canvass the relation between voting and political expression." 383 U.S. at 665, 86 S.Ct. at 1080, 1081.

Several voting rights and ballot access cases since *Harper* have emphasized the close tie between the right of suffrage and the First Amendment. In *Kusper v. Pontikes*, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), the Court ruled unconstitutional an Illinois law that unduly restricted the right to vote. The basis for the Court's holding was the First Amendment and the right of free political association. Similarly, in *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), in striking down a highly restrictive Ohio election law

on equal protection grounds, the Court indicated that the First Amendment may command that political parties and their candidates have reasonable access to the ballot.[12]

■ A careful reading of these and other cases convinces this Court that the right to vote and the right to reasonable access to a ballot, derive not only from the equal protection clause of the Fourteenth Amendment, but also from the First Amendment.[13] The guarantee of free political expression would have diminished practical value if it did not include the right to cast a ballot. Similarly, the right to associate freely in a political party, and to advance a political cause, would lack meaning if the right of reasonable access to a ballot were denied.

Though the Court has found that the right to vote and the right to reasonable ballot access in State elections are protected by the First Amendment, it does not necessarily follow that plaintiffs' First Amendment claim grants this Court jurisdiction to hear and decide the case. Although increasingly willing to impose federal standards on State elections, the Supreme Court still maintains that States possess broad powers in determining the manner and conduct of elections. *Bullock v. Carter*, 405 U.S. 134, 141, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). Thus there remains the question whether the right to petition for a municipal initiative election is properly within the

---

**10.** The Court does not intimate that an equal protection claim could be properly alleged or assure plaintiffs of a federal forum in this case.

**11.** It is anomalous that plaintiffs plead a lack of due process. If it be assumed that they have been deprived of a federally secured right, that deprivation came after a full hearing in a duly constituted court of law with jurisdiction to hear and decide the issue and with the right of appeal. It is difficult to imagine that some further process is due.

**12.** Justices Harlan and Douglas filed separate concurring opinions emphasizing the First Amendment values involved. Justice Harlan stated that he would have answered the issue in *Rhodes* "entirely on the proposition that Ohio's statutory scheme violates the basic right of political association assured by the First Amendment which is protected against state

infringement under the Due Process Clause of the Fourteenth Amendment." 393 U.S. at 41, 89 S.Ct. at 16. *See also Jenness v. Fortson*, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971), and the dissenting opinion of Justice Brennan in *Storer v. Brown*, 415 U.S. 724, 756, 94 S.Ct. 1274, 1291, 39 L.Ed.2d 714 (1974) ("The right to vote derives from the right of association that is at the core of the First Amendment . . .")

**13.** In *Briscoe v. Kusper*, 435 F.2d 1046 (7th Cir. 1971), and *Williams v. Sclafani*, 444 F.Supp. 906 (S.D.N.Y.1978), and implicitly in *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978), the courts found that the protections of the First Amendment encompassed the right to vote and to reasonable ballot access.

purview of State government and beyond the province of federal courts.[14]

As previously noted the initiative election petitioned for by plaintiffs is authorized by the Charter of the City of Norfolk.[15] The Charter is a legislative enactment and was granted by the Virginia General Assembly in 1918. Because it exists at the grace of the State, the Charter is subject to amendment or repeal by the State. Being part of the Charter, the initiative process exists by virtue of State law; it is a right created by the State, and a right that the State properly may modify or withdraw.[16]

The Supreme Court has ruled that State initiative and referendum elections are not inconsistent with a republican form of government. *Ohio ex rel. Davis v. Hildebrandt*, 241 U.S. 565, 36 S.Ct. 708, 60 L.Ed. 1172 (1916); *Pacific States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 32 S.Ct. 224, 56 L.Ed. 377 (1912); *Kiernan v. Portland*, 223 U.S. 151, 32 S.Ct. 231, 56 L.Ed. 386 (1912). Yet the Court has never held that the federal Constitution *obligates* States to provide for initiatives and referenda. Rather, the Court has viewed initiatives and referenda as permissible alternatives, in some instances, to legislation enacted by elected governing bodies.[17]

Cases decided subsequent to *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943) have substantially eroded its meaning and vitality. But insofar as *Snowden* stands for the proposition that federal courts lack jurisdiction to entertain suits alleging the denial of rights or privileges derived solely from State laws, *Snowden* continues as sound precedent. This Court finds that a right to petition for,

have access to the ballot for, and vote in a municipal initiative election, is a wholly State created right, and is not a right secured by the federal Constitution or by an Act of Congress providing for equal rights. *See* 28 U.S.C. § 1343(3).

Accordingly, defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is denied. This case is dismissed for want of federal jurisdiction.

---

14. The rights to vote and to reasonable ballot access logically subsume the right to some kind of election. In the future the courts may be asked to consider what State elections are constitutionally required. This, in turn, may entail a re-examination of the Guarantee Clause found in Article IV, Section 4, of the federal Constitution. Claims arising under this clause, which provide that "[t]he United States shall guarantee to every State . . . a Republican Form of Government," have met little success. *See, e. g. Baker v. Carr*, 369 U.S. 186, 218, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

15. *See* note 1, *supra*.

16. In this connection *see* 2 E. McQuillin, The Law of Municipal Corporations §§ 4.05, 4.144 (3d ed. rev. 1979).

17. For examples of instances when enactment by initiative or referendum is inappropriate, *see Hawke v. Smith* (No. 1), 253 U.S. 221, 40 S.Ct. 495, 64 L.Ed. 871 (1920); *National Prohibition Cases (Rhode Island v. Palmer)*, 253 U.S. 350, 40 S.Ct. 486, 64 L.Ed. 946 (1920).