QUESTION PRESENTED AND CONCLUSIONS
Does the automatic deduction of union fees by school districts violate the State or federal constitutions or the Colorado Campaign Reform Act if some of the union fees are used by the union's political action committee for political activity?
Political subdivisions such as state school districts are permitted to deduct union fees on behalf of a union pursuant to collective bargaining agreements. A portion of the union dues so collected may be allocated by the union for political purposes. However, the Colorado Campaign Reform Act does not permit the school district to make additional expenditures for the purpose of facilitating a union's political fund-raising activity.
DISCUSSION
The local affiliates of the Colorado Education Association ("CEA") have been selected as the collective bargaining representative for the teachers in many Colorado school districts. In most school districts, the membership dues of those teachers who choose to belong to CEA are automatically deducted from their paychecks by the local district and forwarded to CEA headquarters. In addition, the school district may make deductions from the salaries of those teachers who choose not to belong to CEA but who are still required to pay agency fees for CEA representation under the terms of the collective bargaining agreement. Teachers, however, in some school districts (as in Denver), need not pay either union dues or agency fees. In some school districts, CEA pays a nominal charge for automatic payroll deduction which is roughly equal to the total administrative costs of making the deduction. In other school districts, the administrative costs of making the deduction are borne entirely by the taxpayers.
Recently, CEA's leadership adopted a political fund-raising structure called "Every Member Option" that would automatically increase union membership dues by $1.00 per member per month and the money raised from the increased dues would be devoted exclusively to the CEA's Political Action Committee ("EDPAC"). Non-members who pay agency fees are not affected. These temporary deductions become permanent unless the CEA member explicitly requests a refund in writing between September 1 and December 15. If a member requests a refund, CEA will return the full $12.00 as the refund.
Another mechanism has apparently been utilized in the past, and may continue to be utilized in some school districts, to collect for CEA political activities, as well as for the National Education Association ("NEA") political action committee. An automatic payroll deduction is utilized, but instead of collecting a total amount of union dues from which the union allocates the portion earmarked for political activities, a deduction is specifically earmarked for the political action committee contribution. The district is informed of which employees wish to make political contributions, and deducts a specified amount from their paychecks. Under this approach, the school district payroll accounting process is directly utilized to collect PAC contributions on an employee by employee basis.
ANALYSIS
a. Constitutional Issues
The U.S. Supreme Court has recognized the rights of non-union employees to prevent the use of their funds for political purposes. See Abood v. Detroit Bd. of Educ.,431 U.S. 209, 234 (1977) (non-union employees have a constitutional right to prevent union expenditures of their agency fees on political activities). Government employers and public employee unions, in particular, may not force unwilling workers to contribute to political causes, i.e., to engage in "compelled speech."[1] Public employee union expenditures for expression of political views or contributions to political candidates must be "paid by employees who do not object to advancing those ideas and who are not coerced into doing so against their will by the threat of loss of governmental employment." Abood, 431 U.S. at 236.[2]
Here, the voluntary deductions that fund the union's political activities are made only from the salaries of union members, and do not apply to those teachers who are not members of CEA, but who still pay a portion of CEA dues as an agency fee. The agency fee covers only the costs of union representation and does not fund the CEA's political activities. Moreover, in school districts such as Denver's, even the agency fee is voluntary and can be avoided by notifying the union. Thus, since non-members do not pay union dues or PAC contributions beyond the agency fees, if they pay at all, there is no compulsion of speech with regard to non-union members.
There is also no compelled speech with respect to CEA members. Although no person, regardless of union membership, can be compelled to "subsidize the propagation of political or ideological views that they oppose. . .", ChicagoTeachers, 475 U.S. at 305, the CEA scheme does not compel a permanent contribution by CEA members for political purposes.See Machinists v. Street, 367 U.S. 740 (1961) (union members may not be compelled to support political causes to which they object). CEA membership is voluntary and any CEA member may avoid making political contributions by resigning from the CEA or requesting a rebate of their contributions. The effect of the fund-raising scheme, therefore, is to force the CEA member to make a choice among making the contribution, resigning CEA membership, or requesting a rebate of PAC contributions.[3] The presence of this actual choice, however, means that union members are not compelled to subsidize speech that they oppose. Chicago Teachers, id.
Having determined that the CEA proposal does not constitute compelled speech with respect to both member and non-member teachers, the analysis now turns to the question of whether it constitutes compelled speech for the taxpayers who fund the administrative costs of making the deduction. Governments frequently deduct dues of public employee unions from members' paychecks. The service is a benefit to the employee and is performed irrespective of the use of the dues. The activity is content-neutral, and is not intended to advance a particular point of view. Accordingly, the use of taxpayer money for administrative costs of making a deduction of dues, a portion of which the union may allocate for political purposes, is not compelled speech under the United States Constitution.See, United States v. Lee, 455 U.S. 252, 260
(1982); United States v. Frame, 885 F.2d 1119
(3d Cir. 1989).
The question of a separate collection and accounting specifically for PAC funds, such as the NEA PAC, is more problematic. The government would, in essence, be performing a political fundraising function on behalf of an interest group, at the expense of taxpayers.[4] Furthermore, this payroll deduction service is available to one group, but not to others. This is a cause for concern. "A fundamental precept of this nation's democratic electoral process is that the government may not `take sides' in election contests or bestow an unfair advantage on one of several competing factions." Mountain StatesLegal Foundation v. Denver School District, 459 F. Supp. 357,360 (D. Colo. 1978). Under this approach, the government could not, for example, agree to run a payroll deduction for contributions to one political party, but not for another.
Nevertheless, we conclude that the federal courts would not hold that school district collection of PAC funds for the CEA violates the First Amendment. First, the courts have recognized that citizens do not have the ability to prevent every controversial use of public funds. See,e.g., Hunt v. McNair, 413 U.S. 734 (1973);Roemer v. Board of Public Works, 426 U.S. 736 (1976). Secondly, there is a close connection between districts as employers and the CEA as an employee union. The district's payroll deduction service is performed in the course of an ongoing relationship. The law has traditionally given high respect to the union/management relationship. Thus, this is not the same situation as doing payroll fundraising for a political party. Third, the government is engaged only in any administrative function, not in itself communicating a message. It is doubtful whether the government's administrative actions constitute speech by the government.
In conclusion, the CEA's automatic deduction scheme does not violate the federal Constitution. The Colorado Supreme Court has not addressed this issue. It has held that the Colorado Constitution provides greater protection than the federalFirst Amendment. Bock v. Westminster Mall, 819 P.2d 55
(Colo. 1991). Accordingly, it might find greater protections against compelling taxpayers to subsidize speech, i.e., against using public resources to benefit a particular political group. However, for purposes of this opinion, we presume that the Colorado courts would reach the same conclusions as the federal courts.
b. Statutory Issues
The act of deducting fees from member salaries may violate the Colorado Campaign Reform Act, §§ 1-45-101 etseq., C.R.S. (1992 Supp.). Under § 1-45-116(1)(a), a political subdivision, including the school district, may not "expend any public moneys from any source, or make anycontribution in kind to urge electors to vote in favor of or against any issue before the electorate" (emphasis added). "Contribution in kind" means a "gift or loan of any item of real or personal property, other than money" to a candidate or political committee. Section 1-45-103(5). Gifts, loans, payments, or services are contributions in kind or campaign expenditures if they are made "for the purpose of influencing the passage or defeat of any issue." Section 1-45-103(4), (5), and (7).
A school district's contract with the CEA for a system of automatic deductions for the union's collective bargaining activities on behalf of members does not violate the Campaign Reform Act. Those expenses are legitimate expenses for collective bargaining activities and are not made specifically "for the purpose" of influencing the passage or defeat of an issue or the election of a particular candidate. Moreover, school districts such as Denver's can rightfully recover their expenses associated with the automatic deduction plan pursuant to agreement with the union.
Where the district withholds only a single lump sum for all CEA activities, this would presumably not require the district to incur additional expenses for collection of political contributions. The CEA, rather than the district, would be performing the accounting tasks necessary to allocate the money for political or general purposes. The district would not be involved in political recordkeeping. Thus this practice would not violate the Campaign Reform Act.[5] However, to the extent the union requires the school district to incurany additional costs above and beyond the costs of collective bargaining for the purpose of facilitating political fund-raising, those expenditures would be prohibited by the Campaign Reform Act. For example, if there were a separate deduction or separate recordkeeping for a CEA political action committee, this would violate the Act. This does not appear to be the case in Denver, but this practice may exist in other districts. Those expenditures, however small, would constitute in kind contributions to a political committee, i.e., the union's political action committee, and would be regulated by the Act.[6]
SUMMARY
Where CEA members voluntarily join the CEA and where the CEA members are allowed to request a full refund of the political contribution, a local school district's practice of automatically deducting dues that may include a political contribution does not violate the United States or Colorado Constitutions. A local school district's practice of automatically deducting dues that include a political contribution does not violate the Colorado Campaign Reform Act. However, where the local school is required to incur additional expenses to facilitate the CEA's political fund-raising, the Act may be violated.
 GALE A. NORTON Attorney General
 WILLIAM E. THRO Assistant Attorney General
EDUCATION ELECTIONS LABOR UNIONS SECRETARY OF STATE SCHOOL DISTRICTS
ALSO NEED CONSTITUTIONAL ITEMS AND C.R.S. SECTIONS USED HERETHE AGENCY REQUESTING THE OPINION HEREAND A BRIEF SUMMARY HERE
[1] However, non-union employees may constitutionally be required to pay fees to cover collective bargaining costs, in order to avoid "free-rider" problems. Abood v. Detroit Bd. of Educ.,431 U.S. at 221-226; Chicago Teachers Union v. Hudson,475 U.S. 292, 301-02 (1986).
[2] In Abood, the Supreme Court held that dissenting employees in an agency shop setting could prevent the union from spending part of required collective bargaining fees to express union political views unrelated to the union's duties as a collective bargaining representative. 431 U.S. at 234.
[3] Under the Every Member Option program, it is CEA's policy to rebate the entire $12.00 immediately upon request. Thus, once the request for a rebate is made, the interest free loan is really from CEA to the member.
[4] This is a valuable function. For example, in an August 21, 1992, letter to Dr. Evie Dennis, Superintendent of the Denver Public Schools, the Denver Classroom Teachers Association defended the CEA Every Member Option program by noting that "anything short of a payroll deduction approach just does not raise the kind of money we need."
[5] Such an arrangement, where PAC contributions are collected as a part of union dues, would apparently violate federal election law if expended in federal campaigns. The Federal Election Campaign Act provides: "It shall be unlawful for [a federal PAC] fund to make a contribution or expenditure by utilizing money or anything of value secured by . . . dues, fees, or other moneys required as a condition of membership in a labor organization. . . ." 2 U.S.C. § 441b (3)(A). Federal Election Commission regulations further provide that use of such monies are prohibited "even though they are refundable upon request of the payor." 11 C.F.R. § 114.5(a)(1). Seealso Federal Election Comm'n Advisory opinion 1980-113 (ruling that voluntarily designating $1.00 of labor union's monthly dues payment as a PAC contribution would violate 2 U.S.C. § 114b). However, it is our understanding that the CEA PAC funds are used entirely for state elections and thus would not need to comply with federal campaign law.
[6] In determining the value of contribution in kind, a reasonable estimate of the fair market value of the service would be used. Section 1-45-103(5). Thus, the value of the contribution in kind would be equal to the cost of the union's political action committee performing the same task or contracting for the task to be performed by another private party. The cost would not necessarily be the same as the school district's administrative cost, which may be reimbursed. For example, if it would cost the school district $100 to change its computer program so that contributions were made and if it would cost the political action committee $1,000 to account for and collect the contributions using other mechanism, the value of the contribution in kind would be $1,000, not $100.
Based on the facts before us, we cannot determine the value of a contribution in kind. This determination would have to be made on a case by case basis.