**MOUNTAIN STATES LEGAL FOUNDATION, a Non-Profit Colorado Corporation, its members who are residents, taxpayers, and voters within the State of Colorado and Denver School District # 1, Witti Schmidt and Dotty Castle, Plaintiffs,**

v.

**DENVER SCHOOL DISTRICT # 1, Colorado Association of School Boards, and the following individuals: Mr. Omar Blair, Mrs. Virginia T. Rockwell, Dr. Fernie Baca Moore, Mrs. Naomi Bradford, Mr. Robert L. Crider, Reverend Marion J. Hammond, Mrs. Katherine W. Schomp, Mr. Robert Sexson, Ms. Gladys Eddy, Ms. Peggy Lippoth, Mr. Bruce C. McAffee, Mr. Richard L. Quigg, Mr. Robert Felmlee, Ms. Joyce Husband, Dr. Frederick Bierhaus, Mr. Henry E. Bollman, Ms. Dorothea A. Farris, Mr. Robert G. Wilson, Mr. Donald D. Ament, Mr. John Swenson, Mr. Michael T. Vaggalis, and Mr. Frank Miles, Defendants.**

Civ. A. No. 78 M 1094.

United States District Court,
D. Colorado.

Oct. 28, 1978.

William G. Sumners, Jr., Sumners & Fowler, Denver, Colo., and Lance Wells, Mountain States Legal Foundation, Denver, Colo., for plaintiffs.

Michael H. Jackson, Denver, Colo., for defendants Denver School District # 1, Mr. Omar Blair, Mrs. Virginia T. Rockwell, Dr. Fernie Baca Moore, Mrs. Naomi Bradford, Mr. Robert L. Crider, Reverend Marion J. Hammond and Mrs. Katherine W. Schomp.

Reese Miller, Denver, Colo., for defendants Colorado Association of School Boards and the remaining individual defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The official ballot to be presented to the electorate of the State of Colorado at the general election on November 7, 1978 contains, as Amendment No. 2, a proposal to amend the Colorado Constitution in a manner which would affect the authority of all levels of representative government in Colorado to spend public funds. That proposal was placed on the ballot by a voters' petition in the exercise of the power of the initiative, expressly reserved to the people in Article V, Section 1 of the Constitution of Colorado.

At an official meeting on October 18, 1978 the Board of Education, as the governing authority of School District No. 1, adopted Resolution Number 2046, reaffirming Resolution Number 2041, officially opposing Amendment No. 2 and urging its defeat. After declaring that opposition to Amendment No. 2 was a matter of official concern of the district, the Board in Resolution Number 2046 gave specific approval of the following actions:

> The use of so much of the School District equipment, materials, supplies, facilities, funds and employees necessary to
>
> 1. Distribute campaign literature to School District employees, and the parents of children in the schools.
>
> 2. The use of telephones and facilities of the School District during non-working hours by volunteers for the purpose of contacting the public to urge the defeat of this amendment.

Additionally, the Board authorized the free use of a lunch room and auditorium at Thomas Jefferson High School by the "No on 2—2 Won't Do" Committee for the purpose of a public meeting. The resolution further provided that no more than $2,000.00 of school district funds be expended in these activities.

This civil action was initiated by a complaint filed with this Court on October 20, 1978 by the plaintiffs, acting on behalf of

qualified electors of the City and County of Denver and on October 20, 1978, at 4:46 P.M., I entered a temporary restraining order to prevent the implementation of Resolution Number 2046. A hearing on the plaintiffs' motion for preliminary injunction was held on Saturday, October 28, 1978.

Jurisdiction in this matter is found in 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

A preliminary injunction is an extraordinary remedy which should be used only where the plaintiffs have shown a probability that they will prevail on the merits; that irreparable injury will result if immediate relief is not granted; that the ordinary legal remedy is inadequate; and that there is no adverse effect on the public interest.

The plaintiffs have made a strong showing that they will prevail on the merits in their contentions that Resolution Number 2046 is an illegal act, contrary to the law of Colorado and the United States Constitution. School District No. 1 was created by Article XX, Section 7 of the Colorado Constitution, which provides that the City and County of Denver shall alone always constitute one school district. There is no constitutional grant of power and authority to the Board of Education or School District No. 1. It, like all other boards of education for all other school districts in the State of Colorado, must look to the general school laws of the state to determine what is authorized. The specific powers and duties of school district boards of education are set forth in 1973 C.R.S. §§ 22–32–109 and 110. Nothing in those statutes can be considered to be a specific grant of authority to spend public funds in the manner which would be required for the implementation of Resolution Number 2046.

The Colorado General Assembly enacted the Campaign Reform Act of 1974, which has been codified in 1973 C.R.S. (1976 Supp.) §§ 1–45–101 through 121. Section 1–45–116 of that act is a limitation upon contributions by the state, its agencies and political subdivisions. That same section provides:

> They may, however, make contributions or contributions in kind in campaigns involving only issues in which they have an official concern.

The defendant Board of Education of School District No. 1 has interpreted this provision to enable the contributions and contributions in kind called for in Resolution Number 2046. I do not agree.

The characterization of a campaign issue as being of official concern is not a judgment which can be made solely by the board of education. Such an interpretation would give unlimited discretion to the school board to use school funds and school facilities whenever it suited the personal preference of the majority of the members.

What is of "official concern" to a school district board of education is to be determined by reference to the official powers and duties delegated by the general assembly in the school laws. A special election for the sole purpose of voting on a school bond issue is a convenient illustration of a campaign involving "only issues in which they have an official concern." A proposed amendment to the state constitution on a general election ballot is not such a matter. There is no question but that the adoption of the proposed amendment would affect the conduct of the affairs of school districts, together with all other state and local governmental agencies in Colorado. Indeed, the apparent purpose of this amendment is to restrict the authority of representative government. It is a proposal for an organic and systemic change in governance of the people of Colorado to be made by them in the exercise of their ultimate sovereign power. To consider such a fundamental change to be a matter of the official concern of a single unit of government is to distort the relationship of government agencies to the people who are to be served by them.

The members of a board of education of a school district are to serve in the role prescribed by the people, indirectly through the general assembly or directly through the initiative and referendum. The dimensions of the governmental power granted to a school district is a matter of concern of the

people, as grantors, not the board as grantee.

If it is assumed that the board of education has the power to spend public funds and use public facilities for the purpose of informing the electorate about this issue, there is strong precedent for requiring fairness and neutrality in that effort.

The difference between using public resources for the fair presentation of relevant facts and the promotion of a particular point of view was clearly defined by the Supreme Court of California in *Stanson v. Mott,* 17 Cal.3d 206, 130 Cal.Rptr. 697, 551 P.2d 1 (Cal.1976). There, a bond issue for public parks was being supported by the State Parks Department. Writing for the court, Justice Tobriner said at pages 704 and 705 of 130 Cal.Rptr., at pages 8 and 9, of 551 P.2d:

> Indeed, every court which has addressed the issue to date has found the use of public funds for partisan campaign purposes improper, either on the ground that such use was not explicitly authorized (see *Porter v. Tiffany* (1972) 11 Or. App. 542, 502 P.2d 1385, 1387–1389; *Elsenau v. City of Chicago* (1929) 334 Ill. 78, 165 N.E. 129, 130–131; *State v. Superior Court* (1917) 93 Wash. 267, 160 P. 755, 756) or on the broader ground that such expenditures are never appropriate. (See *Stern v. Kramarsky* (Sup.Ct.1975) 84 Misc.2d 447, 375 N.Y.S.2d 235, 239–240). As in the instant case, the majority of these decisions related to expenditures in connection with bond elections.

> Underlying this uniform judicial reluctance to sanction the use of public funds for election campaigns rests an implicit recognition that such expenditures raise potentially serious constitutional questions. A fundamental precept of this nation's democratic electoral process is that the government may not "take sides" in election contests or bestow an unfair advantage on one of several competing factions. A principal danger feared by our country's founders lay in the possibility that the holders of governmental authority would use official power improperly to perpetuate themselves, or their allies, in office (see, e. g., Madison, The Federalist Papers, Nos. 52, 53; 10 J. Richardson, Messages and Papers of the Presidents (1899) pp. 98–99 (President Jefferson)); the selective use of public funds in election campaigns, of course, raises the specter of just such an improper distortion of the democratic electoral process.

In reaching that result, the California Supreme Court cited, with approval, *Citizens To Protect Public Funds v. Board of Education,* 13 N.J. 172, 98 A.2d 673 (1953). In that case, Justice (now United States Supreme Court Justice) Brennan, writing for the New Jersey Supreme Court, determined that a school board had an implied power to make reasonable expenditures for the purpose of giving voters relevant information about a school bond issue, but said:

> The public funds entrusted to the board belong equally to the proponents and opponents of the proposition, and the use of the funds to finance not the presentation of facts merely but also arguments to persuade the voters that only one side has merit, gives the dissenters just cause for complaint. The expenditure is then not within the implied power and is not lawful in the absence of express authority from the Legislature.

98 A.2d 677

An interpretation of the pertinent language of the Campaign Reform Act as a grant of express authority for a partisan use of public funds in an election of this type would violate the First Amendment to the United States Constitution, made applicable to the states by the due process clause of the Fourteenth Amendment. It is the duty of this Court to protect the political freedom of the people of Colorado. The freedom of speech and the right of the people to petition the government for a redress of grievances are fundamental components of guaranteed liberty in the United States. *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).

A use of the power of publicly owned resources to propagandize against a

proposal made and supported by a significant number of those who were taxed to pay for such resources is an abridgment of those fundamental freedoms. Specifically, where the proposal in question—placed before the voters in the exercise of the initiative power—seeks fundamentally to alter the authority of representative government, opposition to the proposal which is financed by publicly collected funds has the effect of shifting the ultimate source of power away from the people. Do not the people themselves, as the grantors of the power of government, have the right to freely petition for what they believe is an improvement in the exercise of that power? Publicly financed opposition to the exercise of that right contravenes the meaning of both the First Amendment to the United States Constitution and Article V, Section 1 of the Constitution of Colorado.

The process of amending the powers of representative government was a subject of discussion prior to the adoption of the federal Constitution. In *Federalist Paper* No. 49, James Madison wrote:

> As the people are the only legitimate fountain of power, and it is from them that the constitutional charter, under which the several branches of government hold their power, is derived, it seems strictly consonant to the republican theory to recur to the same original authority . . . whenever it may be necessary to enlarge, diminish, or new-model the powers of government . .

When residents within a state seek to participate in this process by proposing an amendment to the state constitution, the expenditure of public funds in opposition to that effort violates a basic precept of this nation's democratic process. Indeed, it would seem so contrary to the root philosophy of a republican form of government as might cause this Court to resort to the guaranty clause in Article IV, Section 4 of the United States Constitution. *Kohler v. Tugwell*, 292 F.Supp. 978 (E.D.La.1968) (concurring opinion of Judge Wisdom), aff'd, 393 U.S. 531, 89 S.Ct. 879, 21 L.Ed.2d 755 (1969).

■ The irreparable injury which would result from a refusal to restrain implementation of Resolution Number 2046 is apparent. The election is to be held in a few days and the right of the electorate to a free discussion of the reasons why the electors should approve or disapprove of this proposed constitutional amendment without the partisan participation by the school board is a right which would be irretrievably lost without the intervention of this Court. There can be no adequate legal remedy to compensate for such a loss. The issuance of a preliminary injunction is necessary for the protection of the public interest.

While Rule 65(b) of the Federal Rules of Civil Procedure requires the giving of security, the nominal sum of $10.00 which was ordered in the temporary restraining order is adequate for that purpose here where no monetary loss is at risk.

Upon the foregoing, it is

ORDERED that pending the final hearing and determination of this civil action, the defendant Denver School District No. 1 and all of the members of its Board of Education, together with all of the agents, employees and all persons acting in concert or cooperation with or under the control of the school district and its board of education are enjoined from implementing or in any way acting upon or carrying out Resolution Number 2046, and it is

FURTHER ORDERED that bond shall be posted in the amount of $10.00.