**Jan MONTGOMERY, Circuit Clerk of Leflore County, Mississippi, Plaintiff,**

v.

**LEFLORE COUNTY REPUBLICAN EXECUTIVE COMMITTEE, Claudine L. Gary, Chairperson, Leflore County Democratic Executive Committee, Mary Nell Downs, Chairperson, Defendants.**

Civ. A. No. GC 91–258–D–O.

United States District Court,
N.D. Mississippi,
Greenville Division.

Oct. 29, 1991.

---

Charles Victor McTeer, Greenville, Miss., for plaintiff.

Webb Franklin, Greenwood, Miss., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This matter comes before the court via plaintiff's complaint requesting impanelment of a three-judge court pursuant to § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.

### FACTS

Plaintiff currently holds the elected position of Leflore County Circuit Clerk and acts as that County's voting registrar. To retain the position, she sought the democratic nomination in the September 17, 1991 primary, but was defeated in a run-off election, October 8, 1991.

Plaintiff states in her complaint that defendant committees petitioned the Mississippi Chancery Court, Leflore County for a temporary restraining order, (TRO) one day prior to the run-off. She further states as a result of the petition a TRO issued from Chancery Court, requiring all absentee ballots to be placed in the defendants'/committees' custody. Plaintiff contends that placing the absentee ballots in defendants' custody rather than in the ballot boxes was not in accordance with Mississippi law. She alleges other violations of Mississippi's election laws throughout her complaint and claims that said violations amount to "changes" under § 5 of the 1965 Voting Rights Act, as amended, 42 U.S.C. § 1973c. On the basis of these contentions, plaintiff alleges that the impaneling of a three-judge court is in order.

## DISCUSSION

The only allegations in the complaint relevant to the convening of a three-judge court are those that implicate § 5 of the Voting Rights Act. *Miller v. Daniels*, 509 F.Supp. 400, 403 (S.D.N.Y.1981). Plaintiff contends that the violations of Mississippi law which she cites in her complaint, involve changes covered by § 5, and that those changes have not been precleared pursuant to the statutory procedures. The issue for a three-judge court, then, is whether the acts of defendants Leflore County Democratic Committee and Leflore County Republican Executive Committee are changes within the meaning of § 5.

### A. THE THREE–JUDGE COURT and § 5

■ Section 5 of the Voting Rights Act provides in pertinent part as follows:

... [W]henever a State or political subdivision ... [covered by § 4] *shall enact or seek to administer any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect on November 1, 1968,* ... such State or subdivision may institute an action in the [U.S.] District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, ... and unless and until the court enters such judgment *no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: Provided,* That such qualification, prerequisite, standard, practice or procedure may be enforced without such proceeding if ... [it] has been submitted ... to the Attorney General and the Attorney General has not interposed an objection within sixty days ...

42 U.S.C. § 1973c (emphasis added). The purpose and operation of § 5 have been adequately explained elsewhere. *See, e.g., U.S. v. Board of Commissioners of Sheffield, Alabama,* 435 U.S. 110, 118–22, 98 S.Ct. 965, 972–74, 55 L.Ed.2d 148 (1978); *Allen v. State Board of Elections,* 393 U.S. 544, 548–50, 89 S.Ct. 817, 822–23, 22 L.Ed.2d 1 (1969). Reduced to its barest essentials, § 5 forbids covered jurisdictions from changing their voting qualifications or procedures without the prior approval of the Attorney General or the District Court for the District of Columbia; such approval is known as "preclearance." *Miller v. Daniels,* 509 F.Supp. at 404. Private individuals may seek declaratory and injunctive relief against violations of § 5. *Allen v. State Board of Elections,* 393 U.S. at 554–57, 89 S.Ct. at 825–27. The statute provides that "[a]ny action under this section shall be heard and determined by a court of three judges in accordance with the provisions of 28 U.S.C. § 2284 ..." 42 U.S.C. § 1973c. The three-judge court may adjudicate only what has become known as the "coverage" issue—that is, whether the political subdivision has adopted a change covered by § 5 without obtaining preclearance of that change. *Miller v. Daniels,* 509 F.Supp. at 404. If no such change occurred, or if the change was precleared, then the suit is dismissed; if a change occurred and was not precleared, then it is unlawful and may not be enforced. *Id.*

Although § 5 provides that claims arising under it are to be heard by a three-judge court, it also incorporates the provision of 28 U.S.C. § 2284. That statute, as amended in 1976, states in relevant part:

A single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure
...

*Id.* § 2284(b)(3).

■ This provision stands for the proposition that the single-judge district court to whom the request for a three-judge court is made has the authority to determine if a three-judge court is required. *Id., U.S. v. Saint Landry Parish School Board,* 601 F.2d 859, 863 (5th Cir.1979). Because of the significant time and expense involved with impaneling a three-judge court, courts confronted with § 5 claims have consistently held that the single judge to whom the case is assigned may properly dismiss § 5 claims that are wholly insubstantial and completely without merit. *See, e.g., Broussard v. Perez,* 572 F.2d 1113, 1118 (5th

Cir.1978), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 610, 58 L.Ed.2d 677 (1978); (citations omitted) *Miller v. Daniels,* 509 F.Supp. at 405. *See also, Sharrow v. Peyser,* 443 F.Supp. 321, 323 (S.D.N.Y.1977); *aff'd,* 582 F.2d 1271 (2nd Cir.1978). Regardless of the nature of the relief sought, a single judge has the authority to review a complaint seeking the convening of a three-judge court in order to determine whether it states a substantial claim and one over which the court would have jurisdiction; the single judge has the authority and responsibility to ascertain whether the claim is substantial and one over which the court has jurisdiction. *Sharrow,* 443 F.Supp. at 323–24, *aff'd,* 582 F.2d 1271.

In the very case in which it authorized three-judge courts in § 5 suits, *Allen v. Board of Elections,* 393 U.S. at 561–62, 89 S.Ct. at 829–30, the Supreme Court explained why such panels should be sparingly invoked:

> We have long held that congressional enactments providing for the convening of three-judge courts must be strictly construed ... Convening a three-judge court places a burden on our federal court system, and may often result in a delay in a matter needing swift adjudication ... Also, a direct appeal may be taken from a three-judge court to [the Supreme] Court, thus depriving us of the wise and often crucial adjudications of the courts of appeal. Thus we have been reluctant to extend the range of cases necessitating the convening of three-judge courts.

*Id.* (citations omitted).

"Individuals must not be allowed to obtain a three-judge court, with its concomitant burdens, simply by intoning the catchwords of § 5. This court has an obligation to examine the complaint to determine whether it states a substantial claim." *Miller,* 509 F.Supp. at 405.

### B. SUBSTANTIALITY of the § 5 CLAIM

■ The present situation is one whereby defendants have purportedly acted in violation of precleared Mississippi election laws that remain in full force. The court is of the opinion that the alleged misconduct of the defendant executive committees represents an ordinary, garden-variety election

dispute; plaintiff's attempt to convert it into a voting rights claim under § 5 is "completely without merit." 601 F.2d at 863. Thus, convening a three-judge court on such a claim would patently amount to a misuse of limited judicial resources.

Section 5 refers to changed practices that a subdivision "enacts" or "seeks to administer." The approval or preclearance requirements of § 5 are triggered only when "a state or political subdivision shall enact or seek to administer" a change in its voting procedures. 42 U.S.C. § 1973c, *U.S. v. Saint Landry Parish School Board,* 601 F.2d at 863–64. In other words, some volitional action on the part of the state or a subdivision thereof is required. *Miller,* 509 F.Supp. at 406. It is quite apparent in the instant case that no enactment of a "change" has occurred because neither the Leflore County Democratic Executive Committee nor the Leflore County Republican Executive Committee are governmental subdivisions. The complaint merely alleges that these committees have violated Mississippi election laws. With that in mind, it is the opinion of the court that it was not Congress' intent for litigants to utilize § 5 of the Voting Rights Act for purposes of enforcing precleared state election laws. As previously stated, a three-judge court is not required if the claim is wholly insubstantial or completely without merit. *U.S. v. Saint Landry Parish School Board,* 601 F.2d at 863.

To deny that plaintiff's allegations constitute a claim under § 5 is not to leave her remediless. The state court has jurisdiction to hear complaints that election officials have violated state election laws. *Miller,* 509 F.Supp. at 406. Such claims may be raised in challenges to particular election results. *Id.* Therefore, while plaintiff may have valid grievances under Mississippi law, her complaint lacks a legitimate claim under § 5 of the Voting Rights Act. *Miller,* 509 F.Supp. at 406. The *Miller* court relied on the Fifth Circuit case, *U.S. v. Saint Landry Parish School Board,* 601 F.2d 859, wherein the appeals court affirmed dismissal of a § 5 claim by a district court judge (without assembling two other judges). The appellate court re-

jected plaintiff's argument that the misconduct of local election officials amounted to a § 5 voting procedure. *U.S. v. Saint Landry Parish School Board*, 601 F.2d at 863. Quoting directly from *U.S. v. Saint Landry Parish School Board*, the *Miller* court stated:

> [O]ne would not normally conclude that a state "enacts or administers" a new voting procedure every time a state official deviates from the state's required procedures. The commonsense meaning of "shall enact" indicates that action of a state, as a body, is envisioned, and we think "shall seek to . . . administer" was added to cover situations when an enactment was not actually passed, but when a procedure was nonetheless widely administered with at least the implicit approval of the state governing authority *. . . But we can find no case which even hints that actions of a state official which are in conflict with the state's required procedures should be considered a change in voting procedures enacted or administered by the state within the meaning of § 5 . . .*

509 F.Supp. at 407 (emphasis added).

Litigants with garden-variety election challenges such as ballot counting or election administration have been redirected from federal court to the state tribunals. In so doing, the court has recognized that the Constitution leaves to the states broad power to regulate the conduct of federal and state elections. *Duncan v. Poythress*, 657 F.2d 691, 702 (5th Cir.1981). *See, e.g., Hubbard v. Ammerman*, 465 F.2d 1169 (5th Cir.1972) (federal courts should "not intervene in state election contests for the purpose of deciding issues of state law"), *cert. denied*, 410 U.S. 910, 93 S.Ct. 967, 35 L.Ed.2d 272 (1973); *Powell v. Power*, 436 F.2d 84, 86 (2d Cir.1970) (federal courts are neither equipped, nor empowered, to rectify every alleged election irregularity.)

The Fifth Circuit announced in *Duncan v. Poythress*, 657 F.2d 691 that administration of elections is generally a matter of state concern; more than an ordinary dispute over the counting and marking of ballots is required for federal intervention to be appropriate. *See, Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir.1978).

It would appear then, that misconduct of election officials does not constitute a § 5 claim. *Miller*, 509 F.Supp. at 407. The court could not simultaneously embrace plaintiff's theory and avoid thrusting itself into the details of virtually every election, tinkering with the state's election machinery, reviewing petitions, registration cards, vote tallies, and certificates of election for all manner of error and insufficiency under state and federal law. *Duncan v. Poythress*, 657 F.2d at 701, *quoting, Powell v. Power*, 436 F.2d at 86.

In conclusion, the court is of the opinion that this case appears to be a local election dispute which should be resolved by the Mississippi state court. What plaintiff has conclusively labelled as § 5 changes, are no more than alleged violations of valid state laws, precleared and still adhered to by Mississippi. Thus, these allegations are meritless under § 5 and do not justify convening a three-judge court. Those portions of the complaint alleging violation of § 5 of the Voting Rights Act are dismissed with prejudice. Fed.R.Civ.P. 12(b)(6).