Judy MOORE, George Gerhart, and Mattie Christian, Plaintiffs,

v.

CALEDONIA NATURAL GAS DISTRICT, Mayor Don Myers, Bobby Egger, Harold Honnell, and Brenda Westbrook, Defendants.

Civ. A. No. 1:94CV44–S–D.

United States District Court, N.D. Mississippi, Eastern Division.

June 19, 1995.

Jim Waide, Waide Law Office, Tupelo, MS, Luther C. Fisher, IV, Ellis, Ellis & Fisher, P.A., Tupelo, MS, David S. Van Every, Columbus, MS, for plaintiffs.

Jonathan B. Fairbank, Jackson, MS, Hubbard T. Saunders, IV, Crosthwait Terney, PLLC, Jackson, MS, for defendants.

## MEMORANDUM OPINION DENYING REQUEST FOR THREE–JUDGE PANEL

SENTER, Chief Judge.

This cause is before the court on the defendants' motion for the empaneling of a three-judge court to review the plaintiffs' claims for violation of § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c. The plaintiffs do not dispute that a three-judge court is necessary. Additionally, the defendants have filed a motion for summary judgment of the § 5 claim. Because the court finds the plaintiffs' § 5 claims to be without merit and insubstantial, the defendants' motion is denied, the plaintiffs' § 5 claims are dismissed with prejudice, and the defendants' motion for summary judgment is moot.

## Facts

The Caledonia Natural Gas District (hereinafter referred to as "CNGD") was created in Chapter 834, Local and Private Laws of 1988, and is a valid political subdivision of the State of Mississippi with the power to sue and be sued. Chapter 834 of Mississippi's Local and Private Laws of 1988 was submitted pursuant to § 5 for preclearance to the United States Attorney General. By letter dated March 29, 1989, the United States Attorney General "did not interpose any objection to the change in question." The purpose of creating the CNGD was to provide natural gas service to the residents of the greater Caledonia community. On April 5, 1990, the interim Board of Commissioners of the CNGD adopted rules and regulations governing the elections of commissioners. Upon submission for preclearance, the United States Attorney General did not lodge any objection to these rules and regulations. Part of Chapter 834 provides:

Promptly upon the commencement of natural gas service by the district to not less than one hundred (100) individually billed users, the commissioners shall give notice to each user of an initial election to be held at a time not less than thirty (30) days not more than sixty (60) days from such date. The notice shall state the time, place, and manner in which the users may vote upon the selection of the resident members of the board to terms of one (1), two (2), three (3) and four (4) years by ballot of all users of the district. Such election shall be held in a manner and according to procedures to be established by rules and regulations adopted by the board prior to the giving of notice of such election, . . . .

On October 7, 1993, the interim Board of Commissioners set the initial election for December 21, 1993. This was almost two years after the CNGD had connected service to 100 customers/users. On December 17, 1993, the attorney for CNGD submitted to the United States Attorney General the date of the initial election. The election was held on De-

cember 21, 1993. By letter dated February 15, 1994, the United States Attorney General stated that she did not interpose any objection to the date of the initial election. The plaintiffs contend that the December 21, 1993, election for commissioners of the CNGD was not properly submitted for preclearance by the United States Attorney General as mandated by § 5.

### Discussion

Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, requires the State of Mississippi and any of its political subdivisions to submit "any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect on November 1, 1964," to a three-judge court of the United States District Court for the District of Columbia for a declaratory judgment that such change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color," or submit the proposed changes to the United States Attorney General for approval which is known as "preclearance." *Campos v. City of Houston,* 968 F.2d 446, 450 (5th Cir.1992); *Miller v. Daniels,* 509 F.Supp. 400, 404 (S.D.N.Y.1981). The Supreme Court has declared:

> The Voting Rights Act was aimed at the subtle, as well as the obvious, state regulations which have the effect of denying citizens their right to vote because of their race. Moreover, ... the Act gives broad interpretation to the right to vote, recognizing that voting includes 'all action necessary to make a vote effective.' ... Congress intended to reach any state enactment which altered the election law of a covered State in even a minor way.

*Allen v. State Board of Elections,* 393 U.S. 544, 565–66, 89 S.Ct. 817, 831–32, 22 L.Ed.2d 1 (1969) (citations omitted).

■ The statute provides that "[a]ny action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28...." 42 U.S.C. § 1973c. The purpose of a three-judge court and direct appeal to the Supreme Court was to "lessen federal-state friction which was bound to arise due to the intrusion into traditionally state-controlled province." *Broussard v. Perez,* 572 F.2d 1113, 1118 (5th Cir. 1978). The role of a three-judge court is rather restricted. The three-judge court may only adjudicate "(i) whether a change was covered by Section Five, (ii) if the change was covered, whether Section Five's approval requirements were satisfied, and (iii) if the requirements were not satisfied, what remedy was appropriate." *Lockhart v. United States,* 460 U.S. 125, 129 n. 3, 103 S.Ct. 998, 1001 n. 3, 74 L.Ed.2d 863 (1983). The three-judge court may not determine whether a change has the purpose or effect of denying or abridging the right to vote on account of race or color. That task has been expressly designated to the District Court for the District of Columbia or the Attorney General. *See United States v. Board of Supervisors,* 429 U.S. 642, 646, 97 S.Ct. 833, 834–35, 51 L.Ed.2d 106 (1977).

■ Although § 5 provides that claims arising under it are to be heard by a three-judge court, the pertinent portion of 28 U.S.C. § 2284, which is incorporated with § 5, states:

> A single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure....

*Id.* § 2284(b)(3). The single-judge district court is "limited to the determination whether 'a state requirement is covered by § 5, but has not been subject to the required federal scrutiny.'" *Perkins v. Matthews,* 400 U.S. 379, 383, 91 S.Ct. 431, 434, 27 L.Ed.2d 476 (1971) (*quoting Allen v. State Board of Elections,* 393 U.S. 544, 561, 89 S.Ct. 817, 829–30, 22 L.Ed.2d 1 (1969)). "If no such change occurred, or if the change was precleared, then the suit is dismissed; ..." *Montgomery v. Leflore County Republican Exec. Com.,* 776 F.Supp. 1142, 1145 (N.D.Miss.1991) (*citing Miller,* 509 F.Supp. at 404)). Courts have consistently held that a single judge may dismiss Section 5 claims that are wholly insubstantial and completely without merit. *See United States v. St. Landry Parish School Board,* 601 F.2d 859, 863, 865 n. 9 (5th Cir.1979); *Broussard v. Perez,* 572 F.2d at

1118; *Miller*, 509 F.Supp. 400; *Montgomery*, 776 F.Supp. 1142.

In *Allen*, which authorized three-judge courts in section 5 suits, the United States Supreme Court stated:

> We have long held that congressional enactments providing for the convening of three-judge courts must be strictly construed.... Convening a three-judge court places a burden on our federal court system, and may often result in a delay in a matter needing swift initial adjudication.... Also, a direct appeal may be taken from a three-judge court to this court, thus depriving us of the wise and often crucial adjudications of the courts of appeal. Thus we have been reluctant to extend the range of cases necessitating the convening of three-judge courts.

*Id.* 393 U.S. at 561–62, 89 S.Ct. at 829–30 (citations omitted). "This court has an obligation to examine the complaint to determine whether it states a substantial claim." *Miller*, 509 F.Supp. at 405.

> Regardless of the nature of the relief sought, a single judge has the authority to review a complaint seeking the convening of a three-judge court in order to determine whether it states a substantial claim and one over which the court would have jurisdiction; the single judge has the authority and responsibility to ascertain whether the claim is substantial and one over which the court has jurisdiction.

*Montgomery*, 776 F.Supp. at 1145 (*quoting Sharrow v. Peyser*, 443 F.Supp. 321, 323 (S.D.N.Y.1977)).

■ The crux of the matter is whether the late submission of the December 21, 1993, initial election date and the Attorney General's approval of that date well after the election, constitutes pre-clearance for purposes of § 5.[1] The United States Supreme Court has not addressed the issue of retroactive preclearance under these circumstances, but in two opinions the Justices have approved of its use. In *Berry v. Doles*, 438 U.S. 190, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978), the Supreme Court determined that a procedure

for staggered elections which had not been submitted for approval to the Attorney General was a § 5 violation. As to retroactive preclearance, the Supreme Court stated:

> [W]e adopt the suggestion of the United States that the District Court should enter an order allowing appellees 30 days within which to apply for approval of the 1968 voting change under § 5. If approval is obtained, the matter will be at an end. If approval is denied, appellants are free to renew to the District Court their request for simultaneous election of all members of the Board at the 1978 general election.

*Id.* 438 U.S. at 193, 98 S.Ct. at 2698. In *NAACP v. Hampton County Election Comm'n*, 470 U.S. 166, 105 S.Ct. 1128, 84 L.Ed.2d 124 (1985), the Supreme Court allowed the appellees 30 days in which to submit the changes to the Attorney General for approval. "If, however, the Attorney General determines that the changes had no discriminatory purpose or effect, the District Court should determine, in the exercise of its equitable discretion, whether the results of the election may stand." *Id.* 470 U.S. at 183, 105 S.Ct. at 1138. The court has located only one case where the procedures had been retroactively approved at the time the court was reviewing the § 5 claim. In *East Flatbush Election Committee v. Cuomo*, 643 F.Supp. 260, 264 (E.D.N.Y.1986), a three-judge court held that "retroactive federal approval satisfies the preclearance requirements of § 5." Since the new procedures were eventually approved, the court held that the changes did not violate the prescription of § 5.

The plaintiffs argue that the December 17, 1993, letter from the CNGD was not a request for preclearance. The language of the letter may not have been the traditional request for preclearance, but the Attorney General acted upon it as if it were, and therefore the plaintiffs' argument is moot. Contrary to the plaintiffs' assertion, the Attorney General's letter of February 15, 1994, is an acknowledgment that she had no objections to the election date. Alternately, the plaintiffs argue that even if the initial elec-

---

1. Chapter 834, Local and Private Laws of 1988, and the rules and regulations adopted by the interim commissioners were timely submitted and precleared by the Attorney General.

tion date was precleared, the commissioners set other election dates which were not. The plaintiffs cite several cases which hold that changes which have not been submitted and are cumulative with later changes which are submitted and precleared still must be subjected to § 5 review. Since the other tentative dates were not implemented and were subsequently superseded by the December 21, 1993, election date which was precleared, it is illogical to require the tentative dates to be submitted for preclearance.

■ The interim commissioners' failure to conduct the initial election within 90 days of having one hundred users is not a § 5 violation. The fact of the matter is that the election date has been approved by the Attorney General. "Once the State has successfully complied with the § 5 approval requirements, private parties may enjoin the enforcement of the enactment only in traditional suits attacking its constitutionality; there is no further remedy provided by § 5." *Allen,* 393 U.S. at 549–50, 89 S.Ct. at 823. Thus the plaintiffs' § 5 claims are wholly insubstantial and without merit. The second prong of the three-judge court limited inquiry cannot be satisfied, and a three-judge court would have to dismiss the § 5 claims. Additionally, since a three-judge court cannot review the Attorney General's decision approving the December 21, 1993, election date, it would be absurd to request the convening of a three-judge court to conduct its limited inquiry of the plaintiffs' § 5 claims. Furthermore, there is no relief that a three-judge court could grant. Typically, when there has been a § 5 violation, a three-judge court enjoins implementation of the unapproved election procedure. Since the plaintiffs argue that the § 5 violation stems from the delayed election and belated approval by the Attorney General, do the plaintiffs want the three-judge court to order another election with only the first one hundred users voting? This, of course, is impractical.

The plaintiffs allege that the commissioners of CNGD violated state law when they did not set the initial election within 90 days of having one hundred users. The failure of the commissioners to follow state law is not a § 5 claim. *See Montgomery,* 776 F.Supp. at 1145 (*citing Miller,* 509 F.Supp. at 406) ("The state court has jurisdiction to hear complaints that election officials have violated state election laws."). The Fifth Circuit addressed a similar situation to the case at bar in *United States v. Saint Landry.* Election officials had not followed state mandated procedures.

> [O]ne would not normally conclude that a state "enacts or administers" a new voting procedure every time a state official deviates from the state's required procedures. . . . [W]e can find no case which even hints that actions of a state official which are in conflict with the state's required procedures should be considered a change in voting procedures enacted or administered by the state within the meaning of § 5. On the contrary, the cases speak only of actions taken by the governmental authority of a state as being subject to the approval requirements of § 5.

*Id.* 601 F.2d at 864. In a footnote the *Saint Landry* court continued:

> While we do not attempt to enumerate other situations in which a single judge might dismiss a claim as frivolous, we believe that in this case, where it is clear from the face of the complaint that the alleged change does not have the requisite state involvement, the single-judge court could properly dismiss the complaint.

*Id.* 601 F.2d at 865 n. 9. "Therefore, while plaintiff[s] may have valid grievances under Mississippi law, [their] complaint lacks a legitimate claim under § 5 of the Voting Rights Act." *Montgomery,* 776 F.Supp. at 1145.

An order in accordance with this memorandum opinion will be issued.

## ORDER DENYING REQUEST FOR THREE–JUDGE PANEL AND DISMISSING SECTION 5 CLAIMS WITH PREJUDICE

In accordance with a memorandum opinion issued concurrently, IT IS ORDERED:

That the defendants' motion for the convening of a three-judge panel is denied. The plaintiffs' claims brought pursuant to the Voting Rights Act 1965, 42 U.S.C. § 1973c,

552

are dismissed with prejudice. The defendants' motion for summary judgment of the plaintiffs' § 5 claims is moot.

SO ORDERED.