CITIZENS' RIGHT TO VOTE, an Association, Harold Naylor, Robert Cummings, A.A. Cervantes, III, Robert Ledford and Robert A. Nelson, Individually and as Directors of Citizens' Right to Vote, an Association, Richard S. Thomson, David N. Tullos, Joe Venus and Kathryn M. Jones, Plaintiffs,

v.

J. Ed MORGAN, in his official capacity as Mayor of the City of Hattiesburg, Mississippi; Charles Lawrence, President and member of the Council of the City of Hattiesburg, Mississippi; John Buckley and Eddie Holloway, in their official capacities as members of the Council of the City of Hattiesburg, Mississippi; Clarice Wansley, in her official capacity as Municipal Clerk of the City of Hattiesburg, Mississippi; City of Hattiesburg, Mississippi, a Municipal Corporation; Andy Stetelman, in his official capacity as Chairman of the Hattiesburg Convention Commission, the Hattiesburg Convention Commission, an official Commission of the City of Hattiesburg, Mississippi, Defendants.

Civil Action No. 2:95–CV–233(P)(S).

United States District Court, S.D. Mississippi, Hattiesburg Division.

Feb. 12, 1996.

Michael C. Barefield, Barefield & Barefield, Hattiesburg, MS, for Citizens' Right to Vote, Harold Naylor, Robert Cummings, A.A. Cervantes, III, Robert Ledford, Robert A. Nelson, Richard S. Thomson, David N. Tullos, Joe Venus, Kathryn M. Jones.

Jerry A. Evans, Hattiesburg, MS, for J. Ed Morgan, Charles Lawrence, John Buckley, Eddie Holloway, Clarice Wansley, City of Hattiesburg, Mississippi.

Brian A. Montague, Frank D. Montague, Jr., Montague, Pittman & Varnado, Hattiesburg, MS, for Andy Stetelman, Hattiesburg Convention Commission.

### *MEMORANDUM OPINION AND ORDER*

PICKERING, District Judge.

This matter is before the Court on Defendants' Joint Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(f). The Court, having reviewed the briefs of the parties and the authorities cited, and having heard oral arguments and being otherwise fully advised in the premises, finds as follows, to wit:

### *FACTUAL BACKGROUND* [1]

The current litigation arises out of events relating to the efforts of the City of Hattiesburg to issue bonds to finance the construction of a convention center, as well as other improvements. Plaintiffs and others filed petitions calling for an election.[2] The peti-

---

1. The Court draws its factual material from the allegations of Plaintiffs' Complaint and from Plaintiffs' Response and Brief opposing Defendants' Joint Motion.

2. Title 21, Chapter 33, Section 307 of *Miss.Code Ann.* (1972) provides:

   Before issuing any bonds for any of the purposes enumerated in Section 21–33–301, the governing authority of the issuing municipality shall adopt a resolution declaring its intention so to do, stating the amount of bonds proposed to be issued and the purpose for which the bonds are to be issued, and the date upon which the aforesaid authority proposes to direct the issuance of such bonds. Such resolution shall be published once a week for at least three (3) consecutive weeks in at least one (1) newspaper published in such municipality. * * * If ten percent (10%) of the qualified electors of the municipality, or fifteen hundred (1500), whichever is the lesser, shall file a written protest against the issuance of such bonds on or before the date specified in such resolution, then an election on the question of the bonds shall be called and held as is provided in Section 21–33–309.

tions contained sufficient names to require an election. Plaintiffs allege that Defendants engaged in a concerted effort to have people remove their names from the petitions. After Defendants conducted this campaign to have names removed from the petitions and after some names were removed as being ineligible to sign, the City Defendant adjudicated that there was an insufficient number of signatures to require an election. Plaintiff alleges that Defendants violated state law, violated Section 5 of the voting Rights Act and deprived Plaintiffs of due process and other constitutional rights.

As provided by state law, Plaintiffs appealed the adjudication of the City to the Circuit Court. Before the bonds can be issued, the Defendant City will have to initiate an additional state court proceeding in the Chancery Court to validate the bonds. Even though filing an appeal to the Circuit Court, Plaintiffs filed the instant suit. Consequently, this controversy is now pending before this Court and also before a state court and additionally will be presented a third time before the bonds can be validated.

Defendants filed this Motion to Dismiss in advance of an answer pursuant to Fed. R.Civ.P. 12(a)(4), contending that Count I of the Complaint fails as a matter of law to state a claim upon which relief can be granted. As to Count II, Defendants allege that it should be stricken under Fed.R.Civ.P. 12(f) as redundant when compared with Count III—which they also urge this Court to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

### STANDARD OF REVIEW

Dismissal pursuant to Rule 12(b)(6) is appropriate if a party fails to state a claim upon which relief can be granted. The allegations of the Complaint must be accepted as true when the Court considers whether the Plaintiff has a stated cause of action. See *Cramer v. Skinner,* 931 F.2d 1020 (5th Cir. 1991). Only the Complaint and the allegations contained therein are to be considered in reaching a decision on a Defendant's Rule 12(b)(6) Motion to Dismiss. The Complaint should not be dismissed unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims which would

entitle him to relief. *See Chrissy F. By Medley v. Mississippi DPW,* 925 F.2d 844 (5th Cir.1991).

Rule 12(f) of the Federal Rules of Civil Procedure is the appropriate avenue "for the elimination of redundant, immaterial, impertinent, or scandalous matter in any pleading.... However, it is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint...." 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1380 (1990).

### I. COUNT 1: VOTING RIGHTS ACT

Section 5 of the Voting Rights Act applies to a State or political subdivision's attempts *to enact or administer* "any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect on November 1, 1964...." 42 U.S.C. § 1973c (1988). Defendants argue their alleged misdeeds, if any, do not amount to an "enactment" or "administration" of changes affecting voting within the meaning of the Act. They contend that neither the signature removal campaign, nor the other acts preceding the May 23, 1995 resolution which adjudicated that an insufficient number of signatures were presents to require an election, nor the resolution itself fall within § 5.

Defendants point out that this resolution was passed pursuant to *Miss.Code Ann.* § 21–33–307 (1972)—precleared in its present form as of December 8, 1988. Both parties agree that this statute and judicial precedent allowing a petitioner to remove his name from such a petition, *Coleman v. Thompson,* 216 Miss. 867, 63 So.2d 533 (1953), comply with the Voting Rights Act as the statute was precleared and the case law was established prior to the enactment of the Voting Rights Act. Thus the only question presented to this Court is whether or not the action of the Defendants in conducting the campaign to have signatures removed from the petition, the delay and action on the petition and the final adjudication by resolution that no election called for under state law is a change regarding voting that has to be submitted for preclearance under § 5.

■ Actions brought under § 5 of the Voting Rights Act (42 U.S.C. § 1973c) ordinarily requires the convening of a three judge court. However, "[T]he single-judge court to whom the request for a three-judge court is made has the authority to determine if a three-judge court is required." *Montgomery v. Leflore County Republican Executive Committee,* 776 F.Supp. 1142, 1144 (N.D.Miss.1991). In *Montgomery* the Court went on to hold:

> [A] single judge has the authority to review a complaint seeking the convening of a three-judge court in order to determine whether it states a substantial claim and one over which the court would have jurisdiction; the single judge has the authority and responsibility to ascertain whether the claim is substantial and one over which the court has jurisdiction. (citation omitted).

776 F.Supp. at 1145.

The Supreme Court ruled:

> We have long held that congressional enactments providing for the convening of three-judge courts must be strictly construed ... Convening a three-judge court places a burden on our federal court system, and may often result in a delay in a matter needing swift adjudication ... Also, a direct appeal may be taken from a three-judge court to [the Supreme] Court, thus depriving us the wise and often crucial adjudications of the courts of appeals. Thus we have been reluctant to extend the range of cases necessitating the convening of three-judge courts.

*Allen v. State Board of Elections,* 393 U.S. 544, 561–62, 89 S.Ct. 817, 829–30, 22 L.Ed.2d 1 (1969).

In *Montgomery* the Court went further by saying:

> "Individuals must not be allowed to obtain a three-judge court, with its concomitant burdens, simply by intoning the catchwords of Section 5. This court has an obligation to examine the complaint to determine whether it states a substantial claim."

776 F.Supp. at 1145 (citation omitted).

■ Exercising the responsibility imposed upon this Court, this Court determines that Plaintiffs' complaint does not state a substantial claim. This case is simply another of those cases which demonstrates that many citizens have come to view the federal courts as a potential solution for whatever problem comes along. I fear federal courts over the years have fostered such a notion. Government by court decree is a poor substitute for government by the people. This case is nothing more than a political struggle between those who want an election on a proposed bond issue and those who do not want an election. It has nothing to do with race and it has nothing to do with discrimination. As acknowledged at oral argument, two of the Defendant councilmen voting for the bond issue are black. The Mayor and the other councilmen are white. One of the Plaintiffs is black. In one of its most recent pronouncements on the subject, the Supreme Court referred to the "intrusive mechanisms" of the Voting Rights Act. Its application should be limited to the abuses which it sought to correct. Although some courts have held that an allegation of racial discrimination is necessary, other courts have held to the contrary and some early decisions of the Supreme Court have indicated that no allegation of discrimination is indicated, it is without dispute, and the legislative history clearly indicates that the Voting Rights Act of 1965 was aimed at discrimination because of race or color at the voting booth. Not only does the legislative history indicate such an intent, but the Act itself gives the district court in the District of Columbia or the Justice Department responsibility of determining if any action covered by § 5 discriminates on the basis of race or color. (Even though the single judge nor a three-judge court is given authority to make a determination on discrimination, nevertheless, all actions precleared on the basis that they do not discriminate on the basis of race or color are exempt from § 5 preclearance.) Obviously the purpose of § 5 is to eliminate racial discrimination as it relates to voting.

Plaintiffs acknowledge that this is a case of first impression.

This Court concludes that the conduct of the Defendants both prior to the adoption of the complained of resolution and in adopting

the resolution adjudicating that an insufficient number of signatures were presented to require an election on the bond issue does not constitute a "standard practice or procedure," "enacted or administered." This Court declines to hold that it is necessary for the Plaintiffs to allege discrimination in order to state a valid claim. However, this Court is of the opinion that the failure of Plaintiffs to allege any element of discrimination makes it more difficult for them to establish that their complaint is covered by § 5. Stated conversely, this Court is of the opinion that Plaintiffs alleging racial discrimination would have an easier time in establishing to the satisfaction of the Court that the conduct complained constituted a "standard practice or procedure" "enacted or administered." In this particular case, this Court would be hard pressed to determine exactly what it is that Plaintiffs contend should have been submitted to the Justice Department or to the District Court in Columbia for preclearance.

Even though not on all fours with this case, this Court feels that this case is controlled by *United States v. Saint Landry Parish School Bd.*, 601 F.2d 859, 860 (5th Cir.1979). In that case there was an allegation of racial discrimination. It was alleged that a school board member and others engaged in a vote-buying scheme to defeat two black candidates from being elected to the school board. The Court in that case concluded:

> Although the actions of these poll commissioners could possibly be viewed as a change in voting procedures within the meaning of § 5, we conclude that these actions do not constitute a change that the state *has enacted or sought to administer* within the meaning of that section. This conclusion is compelled by the language of § 5, the nature of the approval procedure envisioned by § 5, and the cases interpreting that section.
>
> .    .    .    .    .
>
> But one would not normally conclude that a state "enacts or administers" a new voting procedure every time a state official deviates from the state's required procedures. The common sense meaning of "shall enact" indicates that action of a

state, *as a body* is envisioned, and we thing "shall seek to . . . administer" was added to cover situations when an enactment was not actually passed, but when a procedure was nonetheless widely administered with at least the implicit approval of the state governing authority.

> We realize, of course, that statutory language is not always interpreted in a common-sense manner.
>
> .    .    .    .    .
>
> Although we can find no case which has interpreted the "shall seek to . . . administer" language, we are certain that whatever that language may cover, it does not cover the isolated actions of the three poll commissioners in this case.
>
> .    .    .    .    .
>
> Surely, Congress did not intend the Attorney General and the district court for the District of Columbia to waste their time considering voting procedures that a state does not wish to enact or administer. But this would be the result if we required the state to submit for approval, as a new voting procedure, those actions of state officials which conflict with the state's required procedures.

601 F.Supp. at 864.

Plaintiffs argue that the language employed by the Court in *Saint Landry*, "situations when an enactment was not actually passed" but was administered with "at least the implicit approval of the state governing authority" supports their position. Plaintiff ignores the requirement that such procedure must also be "widely administered."

This one instance cannot be considered a procedure "widely administered."

Plaintiff has taken isolated quotes from various cases and done a commendable job in trying to put together a brief that compels the Court to accept Plaintiffs' position. In spite of this, this Court is not persuaded. This Court simply does not think that the situation set forth in Plaintiffs' complaint was intended or is covered by § 5 of the Voting Rights Act. This case is analogous and controlled by *Saint Landry*. In *Presley*, one of the Supreme Court's most recent pronounce-

ments in this area, the Court held: "Every decision taken by government implicates voting ... yet no one would contend that when Congress enacted the Voting Rights Act it meant to subject all or even most decisions of government in covered jurisdictions to federal supervision." *Presley v. Etowah County Com'n,* 502 U.S. 491, 503, 112 S.Ct. 820, 829, 117 L.Ed.2d 51, 64 (1992). This is a matter for the state courts. Federal courts should be no more intrusive than necessary to discharge their responsibility. This Court expresses no opinion on the merits of the issues presented effecting state law. The state courts are in better positions than this Court to make those decisions. **Put this footnote in appropriate place.**[3]

## II. Counts II and III: Substantive and Procedural Due Process and Other Constitutional Issues.

Defendants next urge the Court to strike Count II of the Complaint pursuant to Fed. R.Civ.P. 12(f). In addition, Defendants also seem to argue that both Counts II and III are subject to dismissal pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim. As noted earlier, a motion under Rule 12(f) is not the proper means by which to procure dismissal of a complaint. The Court will consider Defendant's attack on Count II as a motion under Rule 12(b)(6).

### A. Due Process

In *Thrasher v. Board of Supervisors of Alcorn County,* 765 F.Supp. 896 (N.D.Miss.1991), Judge Davidson addressed substantive and procedural due process questions in a case involving facts almost identical to the facts presented in the instant case. Although that opinion is not controlling, the Court finds it very persuasive and grounded in common sense. Following the holding in *Thrasher,* this Court concludes that the Plaintiffs have not alleged either a substantive or procedural due process claim. In *Thrasher* the Court concluded: "Even if

names were 'disallowed improperly' as Plaintiffs contend, such proof, without more, would not rise to a constitutional violation." 765 F.Supp. at 899 (fn 3).

The Court discussed the questions which were presented in that case relative to whether or not an election should be called in regard to the proposed bond issue. The Court declined to resolve these questions holding:

> Such inquiries threaten to lead this court far into the thicket of local election matters and far afield from the constitutional violations Section 1983 was intended to protect. Even when all facts are viewed in a light most favorable to plaintiff, the questions posed by this case relate more to the fine "details of administration of the election" for which state laws provide adequate remedy. (citation omitted).

765 F.Supp. at 900.

> Even if defendants did improperly eliminate signatures on the protest petition or view the required number of signatures too restrictively, these cases show that the proper avenue for such claims was through established state election procedures and not the federal courts.

765 F.Supp. at 901.

> Where a state procedure appears to exist for permitting and possibly resolving challenges, ... the power to control the details of such matters is normally conferred to the states.

765 F.Supp. at 902.

> Because the right to vote on bond matters after a certain number of petitions have been filed is conferred by state law, interpretation of that law is appropriately left to state and local authority.

765 F.Supp. at 903 (fn 11).

The Court concluded that even if the allegations of the plaintiff were true "the state procedures cited above appear fully adequate to satisfy the requirements of due process."

**3.** This Court recognizes that in *Pendleton v. Heard,* 824 F.2d 448 (1987), the Fifth Circuit held that the "practice of noticing, then withdrawing bond issues rather than calling an election" was subject to § 5 of the Voting Rights Act. This case is clearly distinguishable in that in that

instance, the governing body of the county did this on seven different occasions. This Court does not view *Pendleton* as justification for extending § 5 of the Voting Rights Act to the situation here complained of.

765 F.Supp. at 903. The state procedures referred to by Judge Davidson are the same procedures available to Plaintiffs in this case. As to the rights which Plaintiff in *Thrasher* sought to protect, which are the same rights sought to be protected in this case, the Court concluded, "the rights they seek are properly resolved by state authorities and state courts." This Court has reached the same conclusion.

**B. Right to Petition, 14th Amendment Privileges and Immunities Clause, and Liberty Interests Under Due Process**

■ Respecting Plaintiff's allegations of deprivation of the right to petition the government, neither party submitted any authority to support their position. Plaintiff does cite several cases recognizing that the First Amendment rights, including the right to petition, are preferred under the Constitution. *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430, *reh'g denied,* 323 U.S. 819, 65 S.Ct. 557, 89 L.Ed. 650 (1945). He further points out that these rights are inseparable. *United Mine Workers v. Illinois State Bar Ass'n,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967). Plaintiffs contend the actions of City officials during the signature removal campaign intimidated petitioners into signing counter petitions and thus amounted to nothing short of censorship and an impairment of the right to petition the government for redress of grievances.

After extensive research, this Court has located only one case that purportedly supports Plaintiff's position. The Colorado case of *Mountain States Legal Foundation v. Denver School District,* 459 F.Supp. 357 (D.Colo.1978), acknowledged the fundamental nature of the First Amendment rights to freedom of speech and to petition the government. *Id.* at 360. The court went on to find that "[a] use of the power of publicly owned resources to propagandize against a proposal made and supported by a significant number of those who were taxed to pay for such resources is an abridgment of those fundamental freedoms." However, the court took great care to point out the proposal at issue was a citizen-sponsored initiative which

sought "fundamentally to alter the authority of representative government;" the current litigation does not present the same issue. *Id.* at 360–61. Instead, what is at issue today is the propriety of a local government's efforts to combat a petition drive for a bond issue—a more mundane issue in the world of local government politics. Some citizens are on one side and other citizens are on the other side. The local government makes its decision which can be appealed under state law. The local government's decision further has to be proved in a judicial validation proceeding. The Federal Constitution, specifically the due process clause, guarantees no more.

Given the context of today's dispute, this Court finds the lack of precedent in support of Plaintiff's position more persuasive than the single district court case cited above. Particularly worthy of note is the fact that of the many other jurisdictions which have adopted *Smith v. Dorsey,* 599 So.2d 529 (1992) same prohibition against public expenditure of government funds for a favored position on political issues, not one has grounded its finding on the possibility that such conduct is an affront to the First Amendment right to petition the government. *See, e.g., Palm Beach County v. Hudspeth,* 540 So.2d 147 (Fla.Dist.Ct.App.1989); *Citizens to Protect Public Funds v. Bd. Of Education of Parsippany–Troy Hills Tp.,* 13 N.J. 172, 98 A.2d 673 (1953).

■ Also persuasive is the district court's opinion in *Wright v. Mahan,* 478 F.Supp. 468 (E.D.Va.1979) which unequivocally recognized the infirmity of Plaintiffs' claim. *Wright* involved a municipality's allegedly improper denial of a properly filed petition for an initiative. The district court characterized the issue as "whether a State judge's denial of a properly filed petition for a municipal initiative election contravenes the First Amendment guarantees of freedom of expression and the right to petition the government for redress of grievances. . . ." Basing its decision on the Supreme Court precedent of *Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1943), the court concluded "a right to petition for, have access to the ballot for, and vote in a municipal initiative

election, is a wholly State created right, and is not a right secured by the federal Constitution." *Wright*, 478 F.Supp. at 474. This Court agrees and accordingly holds the right to petition for a municipal initiative election and any related governmental misconduct is "properly within the purview of State government and beyond the province of federal courts." *Id.* at 473–74.

■ Count III also asserts a violation of the Fourteen Amendment's Privileges and Immunities Clause. The privilege asserted, again, is that of the right to petition the government for redress of grievances. *Snowden v. Hughes* clearly recognizes that "[t]he protection extended to citizens of the United States by the privileges and immunities clause includes those rights and privileges which, under the laws and Constitution of the United States, are incident to citizenship of the United States, but *does not include rights pertaining to state citizenship* and derived solely from the relationship of the citizen and his state established by state law." *Snowden*, 321 U.S. at 6–7, 64 S.Ct. at 400, 88 L.Ed. at 502. The right to petition for an election on a bond issue is clearly rooted in state law. In accordance with the above analysis and consistent with the Supreme Court's holding in *Snowden*, this Court finds that Plaintiffs fail as a matter of law to state a claim under the Privileges and Immunities clause.

Finally, Count III purports to state a claim for a violation of Plaintiff's liberty interests without due process. The due process issue has already been decided as set out above.

### CONCLUSION

For the above stated reasons, this Court finds:

Defendants' Joint Motion to Dismiss is well-taken and should be, and hereby is, GRANTED. Considering the disposition of this cause, a discussion of the abstention doctrine is rendered unnecessary. However, it appears that this clearly would be a case for abstention, even if Plaintiffs had stated a cause of action.

IT IS, THEREFORE, ORDERED AND ADJUDGED that Plaintiff's Complaint is hereby DISMISSED with prejudice. A separate judgment to the same effect will be entered pursuant to Fed.R.Civ.P. 58.

SO ORDERED AND ADJUDGED.